**Jim CARR d/b/a Jim Carr Motors, Appellant,**

v.

**NORSTOK BUILDING SYSTEMS, INC., Appellee.**

**No. 09–87–168 CV.**

Court of Appeals of Texas, Beaumont.

March 23, 1989.

Montgomery L. Smith, David W. Biles, Denton, for appellant.

Tommy Gunn, Orange, for appellee.

## OPINION

BROOKSHIRE, Justice.

An appeal involving the disputed performance and completion of a building contract. The original plaintiff Norstok Building Systems, Inc. (also spelled Norstock), was the prime contractor. Norstok sued Jim Carr d/b/a Jim Carr Motors (Carr) as owner basically for breach of contract in that Norstok alleged that Carr had failed to pay the balance due on the building construction contract. Norstok pleaded that the balance due was $29,597.49 together with legal interest and in addition, a reasonable attorney's fees of not less than $5,000.00.

Carr by an amended pleading became a cross-plaintiff and pleaded that the construction contract specified that the price for the construction of the new automobile dealership and shop facility was $259,-192.00 and that the final payment on that contract shall be due "... provided the contract be then fully performed...." Carr further pleaded that Norstok, under the contract, had to re-execute any work that failed to conform with the requirements of the contract and had to remedy any defects due to faulty materials or workmanship which shall appear within a period of one year from the date of the alleged completion of the contract, pleading further that this provision of the construction contract may apply to the work done by the subcontractors as well as to the work done by direct employees of the prime contractor. Carr pleaded that Norstok had materially breached the contract in 19 or 20 specific defects, or breaches or failures to properly perform the work. Additionally, Carr said that Norstok had failed to comply with its expressed warranties and implied warranties in the construction of the building because of the serious

and numerous defects and failures in the construction of the building and, thereafter, Norstok's failure to cure and correct the same.

Carr also pleaded that Norstok had violated the Texas Deceptive Trade Practices Act, stating that many of the defects and breaches were so serious that Norstok was unable to properly effectuate an acceptable cure. Norstok sued over and against a number of the subcontractors in its third party action naming Armco, Inc., Walter Long d/b/a A & B Plumbing and Construction, DeWitt Heating and Air–Conditioning Company, and Don Russell d/b/a Universal Company.

At a bench trial the judgment was rendered in favor of Norstok to recover money damages from Carr. Carr obtained certain significant offsets. At the conclusion of the bench trial and after a motion for new trial had been overruled by operation of law, the trial court entered its findings of fact and conclusions of law. The judgment in the case, dated May 5, 1987, provided that Norstok recover of and from Carr $21,564.49 plus pre-judgment interest in the amount of $8,736.56, totalling $30,-301.05. Norstok also recovered $6,900.00 from Armco, Inc. Only Carr appeals.

Norstok unequivocally pleaded that it had fully complied with the agreement for the construction and completion of the building. Norstok affirmatively pleaded that it had completed all of the work provided for in the said construction contract in a good and workmanlike manner and that Carr had defaulted in failing to pay for the building as contracted for. From the thrust of the Appellant's brief, we conclude that the major complaints of Carr, inter alia, were: (1) a substantial sway in the top roof ridgeline wherein the ridgeline had a deflection bowing down from each of the ends of the ridgeline toward the center; (2) an improperly joined rafter column whereby a two-piece metal shim was inserted in the joint at the peak of the roofline; (3) in the construction of an adjoining canopy using materials that were not of Armco design and manufacture; (4) installation of a non-conforming HVAC system of duct-work and non-conforming insulation; and (5) arguing that the most egregious defects were an overwhelming and excessive number of unacceptable defective welds in the structural beams. Carr pleaded, briefed and argued a number of other defects.

Norstok adamantly took the position upon the trial that it had performed 100% of all of the work and that it performed 100% of all the work in all the documents that comprised the construction contract. Norstok did not plead substantial performance or substantial completion of the construction contract. From the pleadings standpoint, Norstok endeavored to recover solely on the basis of complete, 100% performance and *never pleaded the equitable theory of recovery by way of substantial performance or substantial compliance with the contract.* The trial court's significant findings of fact, however, found that Norstok merely substantially performed and substantially completed the written agreement. The trial judge failed and declined to make a finding of complete performance for Norstok.

A breach of contract does not occur until one of the contracting parties to the agreement fails to perform an act or a thing that he or she or it has expressly or impliedly promised to do. *Crutcher–Rolfs–Cummings, Inc. v. Ballard,* 540 S.W.2d 380 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.), *cert. denied* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977); *Foster v. Wagner,* 343 S.W.2d 914 (Tex.Civ. App.—El Paso 1961, writ ref'd n.r.e.). The general rule—and the same is well established—is that a party to a contract cannot enforce it or recover damages for its breach unless that party shows that he or she or it has performed the obligations imposed upon him or that he or she has offered to perform them and was able to do so or unless the party shows some valid excuse for failure to perform. *Acme Pest Control Co. v. Youngman,* 216 S.W.2d 259 (Tex.Civ.App.—Waco 1948, no writ). Norstok simply failed and *refused to plead* the equitable theory of a recovery by way of a substantial performance. There are simply no findings of fact of complete perform-

ance, the trial court declining to do so. Hence, error occurs since, under this record, Norstok failed to plead substantial performance nor did Norstok prove the elements of substantial performance. The reason the error is reversible is because the trial court judgment is based solely upon the trial court's finding of substantial performance by Norstok. It is interesting and important to note that the court has a separate finding of fact establishing that 28 or 29 important structural welds needed to be replaced or be repaired and that the reasonable and necessary cost to rectify such defective weld would amount to $200. There are no pleadings of Norstok to sustain the judgment below in its behalf. The judgment must conform to the pleadings.

Appellee invests major reliance on the case of *Del Monte Corp. v. Martin*, 574 S.W.2d 597 (Tex.Civ.App.—San Antonio 1978, no writ). The reliance is upon the language that a pleading of full performance will support the submission *to the jury* of the issues of substantial performance. But *Del Monte* is distinguishable and different. In *Del Monte*, the court held that the contract required the plaintiff, Martin, to grow a certain type of "fancy grade" spinach which would have been impossible for farmer Martin to grow. No impossibility of performance is present in this case.

▪ The rule of substantial performance with respect to building or construction contracts may be stated: a contractor who has in good faith substantially performed a building contract is permitted to sue under the contract since substantial performance is properly regarded as *a condition precedent to the right to bring the lawsuit on the contract*. But the rules of pleadings that are required are different. In no jurisdiction is substantial performance *regarded as equivalent to full performance so far as to entitle the contractor to recover as his damages the full contract price.*

▪ A contractor in building contracts, who has acted in good faith, will be allowed to recover notwithstanding certain *slight and insignificant deviations* from the contract. But his recovery will be di-

minished by the correct amount necessary to compensate for the deviation or deficiency. The defects or deficiencies must not be pervasive. Substantial performance permits only such omissions, defects or deviations from the contract that were inadvertent and unintentional, and are not in bad faith and do not impair the structural aspects of the building. The defects must be remediable without doing material damage to other parts of the building. *Atkinson v. Jackson Bros.*, 270 S.W. 848 (Tex.Comm'n App. [Sec. A] 1925, holding approved). The burden is definitely placed upon the contractor to plead substantial performance and to proffer the evidence to properly measure the deductions and expenses necessary to remedy the defects, deviations and omissions. Interesting and crucial, we think, is the language used by the Supreme Court of Texas in a recent case styled *Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480 (Tex. 1984). There, the Court wrote:

"It is undisputed that *the contract was not fully performed although the restaurant had been substantially completed.* The sum of $20,000 was withheld by Steak House from the contract price." (Emphasis added)

A footnote reads and we quickly agree:

"There are numerous factual settings that may arise in the context of a building construction contract disput [sic], and we do not imply that the rules set forth herein will apply to all building contract cases. The proper measure of damages as well as any allowance offsets must be determined by the facts of the case. *See generally* Guittard, *Building Cntracts [sic]: Damages and Restitution*, 32 Tex. B.J. 91 (1969)."

The high Court held also that in *Vance, supra,* all the building defects were remediable. And then the Court held that when a contractor has substantially performed a building contract, he is entitled to recover the contract price less the cost of remedying those defects. The measure of damages for an owner when the contractor is allegedly to be in breach of a building contract is the cost of completing the job or

of remedying those defects that are remediable, if only part of the contract price has been paid to the contractor. The amount of the owner's damages is credited or offset against the balance of the owner's payments still unpaid. *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160 (Tex.1982); *Graves v. Allert & Fuess*, 104 Tex. 614, 142 S.W. 869 (1912); Guittard, *Building Contracts: Damages and Restitution*, 32 Tex.B.J. 91, 118–120 (1969). The Court held that when Vance alleged facts which entitled him to recover for his performance and those allegations were denied by Steak House, then Vance was placed in the position *of having to prove every fact essential to his case.* The Supreme Court in *Vance, supra,* unequivocally declined to overrule *Atkinson, supra.* The proof, the record and the Findings of Fact show that there was not a full compliance with the contract. There was no full, complete performance. Thus, Norstok could not recover without invoking, pleading and proving the elements of substantial performance. *Atkinson, supra.*

The Supreme Court, in *Vance, supra,* pointed out that, under the modern Texas Rules of Civil Procedure, the contractor may efficaciously require the owner to define and enumerate the alleged defects in a building, citing then *TEX.R.CIV.P. 166b–169.* Furthermore, the high Court said the contractor may obtain the right, under the Texas Rules of Civil Procedure, to enter the owner's premises for the purposes of inspecting and observing what defects, if any, are present, citing then *TEX.R.CIV.P. 166b(2)(c).*

Crucial and significant it is to note that in *Vance, supra,* the Supreme Court held that when a breaching contractor brings suit with proper pleadings to recover for his substantial performance, the contractor is required to prove that he did substantially perform, and prove the consideration due him under the contract, and prove the defects and the cost of remedying the defects due to his errors and omissions. This holding by the Court clearly emphasizes the need for the contractor to affirmatively plead the equitable doctrine of substantial performance.

Therefore, Norstok could prevail only if it affirmatively pleaded and proved (a) that Norstok had substantially performed and substantially completed the contract, (b) the amounts still due and owing on the contract under its contract with Carr, and (c) the existence of and the cost of repairs or the cost of remedying the defects in the work or performance including a showing of the defects.

### The Procedural Posture of the Trial And Carr's Interrogatories Propounded to Norstok

Carr posed an interrogatory to Norstok requiring the name of each and every expert witness consulted and the name of each and every expert witness that would be called to testify at the time of trial. Carr warned Norstok of its duty to amend the answers and to keep the answers current. Norstok was further warned that the interrogatory was a continuing one and if some answer was to be made on the lack of any knowledge or information then, when that knowledge or information came to the attention of Norstok, that it would be required to formulate complete answers and to bring the answers up to date. Norstok utterly failed to respond to this interrogatory. Additionally, Carr effectively succeeded in limiting Norstok's proffer to admit evidence only on the factual issues of the terms of the contract, itself, and on Norstok's pleaded position of full performance of the said contract and the actual amount Norstok claimed was due and owing on the alleged full performance of the contract. Hence, Carr's actions, objections and motions effectively prevented any expert testimony offered by Norstok, or for that matter, any expert testimony offered by any other party to serve as evidence of the existence of the defects in Norstok's performance. More importantly, Carr prevented any such expert testimony to properly come before the trial judge as to the cost of remedying the several defects. Norstok never proved any defects by expert testimony or other evidence. Nor did Norstok offer proof of the cost of remedying the several serious defects.

■ There is a stringent penalty for failing to follow discovery rules. The failure to designate expert witnesses is the automatic exclusion of any expert testimony or evidence offered by the violating party. *TEX.R.CIV.P. 215(5)* (Vernon Supp. 1989). The duration of the trial extended over several years and this fact must be borne uppermost in mind. Our Supreme Court has, with zeal, rigidly and stringently enforced these rules of discovery. *E.F. Hutton & Co., Inc. v. Youngblood*, 741 S.W.2d 363 (Tex.1987).

In *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297 (Tex.1986), the Supreme Court wrote, in substance, that the failure to supplement such answers results in the loss of the opportunity to offer that witness' testimony. The Court wrote: "The sanction is automatic." Carr properly and timely objected on the ground of Norstok's declining to comply and refusing to comply with Rule 166b and especially that part of 166b that requires up to date supplementation. The objection was to the use of any expert witness' testimony on behalf of Norstok, including evidence of substantial performance. The able trial court stated that, in one instance concerning one witness, he thought the witness was testifying as an expert witness and that the court may be changing his rulings, stating further that "this court ought to have everything in front of it." The record reflects that the trial court permitted Carr to have a full, running bill of objection to the testimony of experts. *TEX.R.CIV.EVID. 105.* We conclude that Carr's objections were properly and accurately stated, that some of that evidence was admissible to rebut Norstok's action over and against certain subcontractors, but the same was limited; it was not admissible against Carr on substantial performance. And, of course, the pleadings of Norstok determined the issues to be tried on the merits against Carr. *Erisman v. Thompson*, 140 Tex. 361, 167 S.W.2d 731 (1943).

■ Hence, we conclude there was no expert testimony and, in the alternative, insufficient expert testimony, or testimony of other persons having knowledge, to support the doctrine of substantial performance due to the limitation of the scope of the admissibility of certain testimony from parties other than Norstok. As a further alternative, we conclude that the finding by the trial judge of substantial performance is against the great weight and preponderance of the evidence, which was available to Norstok; also, this finding lacks pleadings to support it. *See TEX.R.CIV.EVID. 105(a).*

■ It is axiomatic that the contract upon which Norstok relied and upon which Carr made a counterclaim had only two parties—Norstok and Carr. It is well established that there is no privity of contract between an owner in a situation like this and the subcontractors that were subcontracted with strictly by the prime contractor. Therefore, no cause of action exists as between the owner and the subcontractors. *George v. Hall*, 371 S.W.2d 874 (Tex.1963).

And, of course, the evidence to be admissible and to be probative must follow and comport with the pleadings. The only party with which Carr is involved by way of any of the causes of action was, and is, Norstok. The Supreme Court in *Erisman v. Thompson, supra,* discussing the necessity of conforming the evidence to the issues raised by the live pleadings wrote, 167 S.W.2d at 733:

"... [P]leadings determine the issues upon which parties go to trial, and it is not even proper to admit evidence unless it is addressed to or bears upon some issue raised by the pleadings. [Citations omitted] The rule further is that allegations of the pleadings and the evidence offered thereunder must conform to each other...."

Hence, certain evidence adduced from the subcontractors and the witnesses of the subcontractors could not and did not inure to the benefit of Norstok. This evidence simply could not be used by Norstok against Carr. There are no pleadings of a cause of action between Carr and any of the subcontractors and there were no issues between Carr and any of the subcontractors; hence, no evidence from the subcontractors would be permissibly admissi-

ble under this record as against Carr. *TEX.R.CIV.EVID. 105.* Another reason or ground for holding as we do is that if we permitted Norstok to profit by its own failure to comply with the rules of discovery then we would be making ineffective the discovery rules, especially the rule on interrogatories.

### Norstok's Cause of Action and Posture at Trial

Furthermore, a major thrust of the record before us shows clearly that Norstok's position at trial was that it was attempting solely to prove a breach of contract by Carr by failing to pay the entire $29,597.49. Also, Norstok proceeded to attempt to show its own complete full performance—not any type of substantial performance—hence, Norstok failed to prove the defects and the cost of remedying the defects and, therefore, we cannot sustain the trial court's finding of substantial performance *in favor of Norstok.* Norstok put on its whole case and yet it did not attempt to prove, nor did it prove, any of the defects in its performance, the nature of the defects or omissions; nor did Norstok attempt to prove the cost of remedying any such defects. But the trial court found important defects, omissions, necessary repairs, and a deflection.

Carr, on the other hand, had the right to prove the numerous defects in constructions as well as the deviation from the contract. Carr had the right to prove these matters since Carr took the position that Norstok had not fully completed and fully performed the contract and, therefore, Norstok was not entitled to the full contract price. The record clearly demonstrates that Norstok failed to fully perform the construction contract; and the trial court so held. The judgment, therefore, is contrary to Norstok's pleadings. Importantly, the trial court did not find full performance.

Therefore, the trial court's entering a judgment based on substantial performance was reversible error. The able district judge, with laudable candor, stated in the record that it was difficult to correctly apply the rules established in substantial performance cases. We readily admit to the same difficulty; but we think we must follow, inter alia, the Supreme Court in *Vance v. My Apartment Steak House, supra,* and *Atkinson v. Jackson, supra.*

### Appellant's Great Weight and Preponderance Points

■ Appellant argues that the trial court erred in failing to actually render judgment for him on its cause of action for breach of contract solely because Finding of Fact XXVI was against the great weight and preponderance of the evidence, claiming that the great weight and preponderance of the evidence showed that Norstok materially breached the building contract by deviating from the contract terms and specifications, and by rendering defective work on a number of the contract provisions and by materially breaching both express and implied warranties. We are not permitted to sustain this point of error because if the finding is against the great weight and preponderance of the evidence we can only remand. R. Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error ", 38 TEXAS L.REV. 361 (1960). A Court of Appeals, being an intermediate court, can unfind certain facts but we cannot go forward and affirmatively find facts that would be the basis of a rendered judgment in favor of Carr against Norstok. *Texas Nat. Bank v. Karnes,* 717 S.W.2d 901 (Tex.1986).

Appellant argues vehemently that the trial court erred in failing to render judgment for him, Carr, on his cause of action for violation of the Texas Deceptive Trade Practices Act because the Findings of Fact XXVI and XXVII were against the great weight and preponderance of the evidence. Finding Number XXVI dealt primarily with express and implied warranties and deceptive acts. Finding Number XXVII dealt principally with violations of the Texas Deceptive Trade Practices Act. Again, we rule that our proper order would be a remand. Therefore, we cannot sustain the fifth point of error.

Point of error six is similar to points of error four and five in that Carr argues that the trial court erred in failing to render a judgment for Carr in an amount equal to three times the actual damages suffered by Carr. Carr argues that Norstok knowingly committed false, deceptive and misleading acts which violated the Texas Deceptive Trade Practices Act. But the trial court did not so find. Again, we cannot affirmatively find facts. We conclude the correct procedure is to reverse the judgment and remand the cause. The state of record demands it. Frankly, justice would be served by a remand and retrial. We have found error, we have found reversible error, and we therefore reverse the judgment of the court and remand the whole cause for new trial.

Having found error, we also reverse the judgment and remand the cause in the interest of justice, which we have the prerogative to do, as an additional ground for the remand.

### Appellee's Brief

■ The procedural aspects of this case are very different from the cases cited by Appellee because of the way that the case developed at the pretrial discovery stage and the manner in which the case developed on the trial. Norstok simply did not prove total and complete performance (nor did the trial court find complete performance) although that's the rigid and inflexible position that Norstok unequivocally took at the trial and also vehemently takes on appeal. Carr did not undertake the burden of proving the various elements that are essential to the theory of substantial performance. Carr was basically pleading that the contract had not been completely performed and was undertaking to prove credits, deductions and offsets so that Carr would not have to pay the full $29,579.49 plus interest. The evidence that Carr brought forward was to prove that the contract was not fully and completely performed in a good and workmanlike manner.

In various places in the documents comprising the whole contract, Norstok proposes to perform the work on a turnkey basis and complete the building so that it will be a turnkey construction job. Further, Norstok affirmatively pleaded, in its live pleadings, that it had completed all the work provided for in said contract in a good and workmanlike manner. Also, the verbal testimony of Mr. Hughes, an executive of Norstok, was that Norstok had done 100% of the work provided for by the contract. We find this in the Statement of Facts:

"Q Mr. Hughes, let me make sure that I understand you. You did a hundred per cent of the work in the contract. Correct?

"A That is correct."

. . . .

"Q Mr. Hughes, what does Norstok warrant to purchasers of these buildings which it erects, that they will be constructed in a good and workmanlike manner?

"A Yes."

. . . .

"Q All right. And, you warrant the labor and materials to be of good and workmanlike manner condition. Am I understanding you correctly?

"A That is correct. That's a standard contractor's warranty."

Carr's pleadings, position and proof was to show the defects, the deviations, the omissions and the variations from the contract and the damages resulting therefrom in order to defeat Norstok's total contract recovery. Carr was negating the allegations of total and complete performance by Norstok. And, of course, the judgment for Norstok fails to conform to its pleadings.

The trial court refused to find a complete or total performance of the contract. Hence, in actuality, Norstok lost its case on its only pleaded cause of action and on the only evidence it presented. Even now, on appeal, Norstok inflexibly insists that its only pleaded cause of action and its only even attempted to be proven cause of action was that of an absolute, total completion and total performance of the contract. Norstok lost before the trial judge either wittingly or unwittingly. But, again, jus-

tice, we sanguinely determine, demands another trial on remand.

It would not be fair or equitable for us to deny all relief to Norstok and render judgment to that effect; nor will this record permit it. Carr had a right to know, under *TEX.R.CIV.P. 45*, and receive fair notice by way of the live trial pleadings, of what it would be faced with and met with at the trial and upon what theory the case would be tried by Norstok. Carr was in a position to be aware only of a cause of action against it for a totally performed and completely performed contract at 100% in a good, workmanlike manner. Yet, the judgment below is not based upon that cause of action. Rather, the judgment is based upon an entirely different cause of action. We quote from *TEX.R.CIV.P. 301* as follows:

"The judgment of the court shall conform to the pleadings...."

Startlingly, we discover in the Appellee's brief:

"Norstok's cause of action, pleadings, and proof were predicated upon full and complete performance of the contract ... Norstok's position throughout the trial remained constant and firm; it had fully and completely performed its contract to construct a building for Carr."

But the proof fails and the trial court disagreed and found to the contrary. Appellee's brief further states:

"There is absolutely no attempt by Norstok to prove anyting [sic] but 100% performance."

The trial court's findings defeat Norstok's theory of recovery. The record shows Norstok had simply mispleaded its case. It asked for no trial amendments. Both briefs were excellent and helpful and amazingly candid and "up front." The cases relied on by the Appellee do not fit this record from the standpoint of the pleadings, the proof and the discovery rules, especially on interrogatories.

We, therefore, reverse the judgment and we remand the case for a new trial.

REVERSED AND REMANDED.

BURGESS, Justice, concurring and dissenting.

I concur in the majority's remand regarding Norstok's cause of action. I respectfully dissent to the complete remand. The trial court found against Carr on the deceptive trade practice allegations. The majority has found no error in that respect. I would affirm the trial court in that regard and only partially remand.