**Robert L. MOODY, Sr., d/b/a Moody Interests, Appellant,**

v.

**EMC SERVICES, INC., Appellee.**

**No. C14–90–00642–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

March 26, 1992.

Rehearing Denied April 30, 1992.

John A. Buckley, Jr., Andrew J. Mytelka, Galveston, for appellant.

Janna L. Ivey, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

Robert L. Moody, Sr., d/b/a Moody Interests, appeals from a judgment in favor of appellee, EMC Services, Inc., in appellee's suit to recover payment for construction services rendered. Appellant brings four points of error challenging the sufficiency of the evidence, the jury issues, the trial court's failure to grant a new trial in light of alleged jury misconduct, and lack of segregation of attorney's fees. Because we find legally insufficient evidence of para-professional fees and a lack of segregation of attorney's fees, we affirm in part and reverse and remand in part.

Jay Balentine, whose business card stated that he was an administrative assistant for Moody Interests, was allegedly in charge of construction work on the 4M Laundry, a company owned by the Three R Trust. The Three R was an irrevocable trust created for the benefit of the children of Robert L. Moody, Jr. The trustee of this trust was Irwin M. Herz. In January 1983, Balentine met with EMC's vice president, Rex Moran, to discuss construction work EMC would be performing. At this meeting, Balentine told Moran that Robert Moody owned the property on which the laundry was located. All EMC communications with Balentine were addressed to "Moody Interests ... Attention: Jay Balentine." The parties entered into a written contract and Balentine signed this contract on a signature line under which his name and the name "Moody Interests" appeared. After this work was complete, EMC received payment by a check issued by Three R Trust.

Before receiving payment for the work performed under written contract, EMC orally agreed to perform some additional piping work on the 4M Laundry. This was a cost-plus agreement under which EMC would receive a forty-five (45) per cent markup of its direct labor cost, and a seven and one-half (7½) per cent markup on everything else. In connection with this work, Balentine gave Moran a plant layout, identified as "Moody Laundry" and a copy of a handwritten list of items entitled "Moody."

Balentine testified that Moran was told he worked for Three R, but Moran testified he was never told this. EMC's foreman on the cost-plus job testified that Mr. Moody visited the job site regularly, that Moody gave instructions to Balentine, and that both Balentine and Moody gave the EMC foreman directions at the site. Moody admitted he often visited the job site and may have given the foreman instructions about a gas line. EMC sent periodic requests for payment addressed to Moody Interests, but no payment was ever received by EMC.

As EMC was finishing its piping work, a dispute arose concerning certain defects and over-charges. In June 1983, Moran and Jim Mayberry, another principal officer of EMC, met with Moody and Balentine to discuss the problems with EMC's performance and to discuss payment. Irwin M. Herz, Jr., the trustee of Three R Trust also attended this meeting. Appellant claims that when Moran learned Herz was an attorney, he demanded that Herz leave the meeting. Mayberry testified that, during this meeting, Moody offered to settle the dispute. The parties also discussed certain defects in EMC's work.

On June 8, 1983, EMC filed a lien against the property, which included an affidavit stating that Three R Trust was the owner of the property and that EMC had furnished materials and labor to Three R Trust pursuant to a contract. Approximately three years later, EMC sued Robert Moody on the oral agreement claiming that Moody agreed to the cost plus contract by and through his duly authorized agent, Balentine.

In the first point of error, appellant claims no evidence supports the jury's findings that Moody was liable for the contract.

Under this general point, appellant raises six sub-points contending that (1) no evidence shows Moody was the agent of Three R Trust, (2) Moody received no benefit from the work performed, (3) EMC elected to bring suit against the wrong party, (4) the trial court erred in admitting testimony attributable to an alleged agent before a showing of an agency relationship, (5) no evidence supports the jury's finding that Balentine had actual or apparent authority from Moody individually or d/b/a Moody Interests, and alternatively (6) insufficient evidence supports the finding of apparent or actual authority. Appellant argues that the evidence conclusively showed that Balentine was not an agent of Moody or Moody Interests, but was the agent of Three R Trust, the undisputed owner of the property and the party with which EMC contracted. Thus, appellant alleges that if any party is liable under the contract, it is Three R Trust and not Moody or Moody Interests.

Where a party challenges the legal sufficiency of the evidence, a reviewing court may consider only the evidence tending to support the jury's finding, disregarding all contrary evidence and inferences. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990). The jury's finding must be upheld if any evidence of probative force supports it. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989).

When confronted with a challenge to the factual sufficiency of the evidence supporting a jury finding, the reviewing court must examine all the evidence. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986). After considering all of the evidence, the reviewing court may set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

An agent is one who consents to act on behalf of and subject to the control of another, the principal, who has manifested consent that the agent shall so act. *Republic Bankers Life Ins. Co. v. Wood*, 792 S.W.2d 768, 778 (Tex.App.—Fort Worth 1990, writ denied). A principal may confer actual authority on an agent either expressly or by implication. *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 847 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Actual authority means authority the principal intentionally conferred upon the agent, intentionally allowed the agent to believe he possessed, or by want of due care allowed the agent to believe he possessed. *Currey v. Lone Star Steel Co.*, 676 S.W.2d 205, 209–10 (Tex.App.—Fort Worth 1984, no writ).

Apparent authority, on the other hand, is a form of estoppel whereby a third party relies upon conduct by the principal which would lead a reasonably prudent person to believe the agent had authority to act. *See Ames v. Great Southern Bank*, 672 S.W.2d 447, 450 (Tex.1984). In determining whether the principal conferred apparent authority, one must look only at the acts of the principal. *See Guthrie v. Republic Nat'l Ins. Co.*, 682 S.W.2d 634, 637 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The principal must have affirmatively held the agent out as possessing authority or must have knowingly and voluntarily permitted the agent to act in an unauthorized manner. *Id.*

The jury received instructions setting out the law on actual and apparent authority and found that Balentine acted as agent for Moody d/b/a Moody Interests, that Balentine had "actual and/or apparent authority to agree, and while acting within such authority did agree with [EMC] for [EMC] to perform labor and services and provide material, supplies and equipment" for Moody d/b/a Moody Interests. We find that there was some evidence to support this finding.

Although no evidence supports a finding that Balentine had actual authority, evidence does show he had apparent authority to bind Moody d/b/a Moody Interests to an oral agreement with EMC for materials and services. Before entering the oral agreement, EMC had performed work under a written contract, signed by Jay Bal-

entine, Moody Interests. Although EMC was paid for this earlier contract work by a check from Three R Trust, EMC did not receive the check until after beginning work under the oral agreement. During construction, Moody visited the site often, and occasionally gave the foreman instructions. EMC sent Moody a demand letter for payment. When no payment was received, Moran called Moody. Moran testified that Moody said he thought the costs were too high. Moody never told Moran that he was not responsible for payment. Moody testified that EMC was told that Three R Trust was the party responsible for payment. Moody classified his input as that of an advisor. Moody further testified that any actions he took with respect to the 4M Laundry were done with Herz's permission.

■■■ Although Moody's testimony contradicts some of appellee's evidence, it is the jury's province, as the trier of fact, to judge the credibility of witnesses and the weight to be given their testimony. *See Walter Baxter Seed Co. v. Rivera*, 677 S.W.2d 241, 244 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). An appellate court may not interfere with the jury's resolution of conflicts in the evidence or pass upon the weight or credibility of the witness' testimony. *Id.* We think the evidence is sufficient to support a finding that Moody's conduct could have led a reasonable person to believe that Balentine was an agent of Moody d/b/a Moody Interests. Thus, we overrule sub-points 1(5) and 1(6).

The jury's finding that Balentine was an agent of Moody d/b/a Moody Interests also contained a finding that Balentine had the authority to contract and did contract, on behalf of Moody d/b/a Moody Interests, with EMC. Although EMC admitted learning, after performance of the work, that Three R Trust was the owner of the 4M Laundry, and admitted that the check for payment under the first contract came from Three R Trust, the jury found that EMC orally contracted with Moody d/b/a Moody Interests. Moody does not claim insufficient evidence as to this agreement. Rather, Moody claims he cannot be liable

because he was not an agent for Three R Trust and because he received no benefit.

Regarding benefit, appellant apparently claims that there is no consideration since Moody received no benefit from the oral contract. Appellant, however, did not request an issue or instruction regarding consideration or benefit to Moody. Appellant asserted no evidence of benefit in its motion for directed verdict and in its objection to jury question number three regarding ratification. The jury's consideration of this question was conditional upon a negative finding under jury question two. Because the jury answered question two affirmatively, they never addressed question three. Under question two, the jury found that Balentine had authority to enter, and did enter, an agreement on behalf of Moody d/b/a Moody Interests with EMC for the performance of services and to provide necessary materials. There was evidence of Balentine's agency and apparent authority to enter the agreement. Furthermore, there was evidence of conduct that would have led a reasonable person to believe Balentine was an agent of Moody d/b/a Moody Interests. This question did not require a finding of benefit to Moody. Thus, we need not determine whether evidence supports an issue the jury did not address. We overrule sub-point 1(2).

Appellant also argues there is no evidence Moody was an agent for Three R Trust and that appellees sued the wrong party. Appellant does not claim the trial court erred in failing to submit a question or instruction about Moody's agency. Rather, appellant argues that Moody cannot be held liable unless there is evidence he was an agent of Three R Trust. The jury, however, found that EMC orally agreed to perform services for and provide materials to Moody d/b/a Moody Interests, not to Three R Trust. As discussed above, sufficient evidence supports the jury's finding of apparent authority on the part of Jay Balentine to bind Moody d/b/a Moody Interests. Regardless of which entity actually owns the property, the jury found that Moody d/b/a Moody Interests was responsible for payment for the work provided by EMC. Thus, we disagree with appellant's

claim that no evidence supports liability because no evidence shows Moody was an agent of Three R Trust. We overrule sub-points 1(1) and 1(3).

Appellant further alleges the trial court erred in admitting testimony of an alleged agent before a showing of an agency relationship. The testimony to which appellant objected is that of Rex Moran, owner of EMC, as to Balentine's statements concerning the ownership of the property.

 To obtain reversal of a judgment based on an error in the admission or exclusion of evidence, an appellant must show the trial court's ruling was "calculated to cause and probably did cause rendition of an improper judgment." *See* TEX.R.APP.P. 81(b)(1). Reversible error usually does not occur in connection with evidentiary rulings unless the appellant demonstrates the "whole case turns on the particular evidence admitted or excluded." *Shenandoah Assoc. v. J & K Properties, Inc.*, 741 S.W.2d 470, 490 (Tex.App.—Dallas 1987, writ denied).

 We do not find reversible error in the admission of this testimony. We have previously held that, although no evidence supported a finding of actual authority by Balentine, sufficient evidence supported the finding of agency and apparent authority. The evidence supporting this finding consisted solely of the evidence of Moody's conduct, leading a reasonable person to believe that Balentine had authority as Moody's agent to contract with EMC. Thus, the testimony by Moran concerning statements by Balentine were not competent evidence supporting the finding and were not part of this court's review. Because appellant has not demonstrated the judgment turned on the challenged evidence, we find no reversible error in its admission. We overrule sub-point 1(4).

In point of error two, appellant contends the trial court erred in failing to grant a new trial in light of the evidence of jury misconduct. Under this general point, appellant raises the following five sub-points: (1) the jury's agreement to be bound by less than ten jurors is misconduct which denied Moody his right to trial by jury; (2) the trial court erred in refusing to hear juror's testimony concerning the jury misconduct; (3) the jury made an impermissible agreement to be bound by less than a vote of ten; (4) such an agreement constitutes an "outside influence;" and (5) the trial court's instructions to the jury constitute an outside influence within the meaning of Texas Rules of Civil Evidence 606(b).

 The Texas Rules of Civil Procedure and the Texas Rules of Civil Evidence prohibit jurors from testifying about activities and statements that occurred during their deliberations. *See* TEX.R.CIV.P. 327(b); TEX.R.CIV.EVID. 606(b). Under these rules, all testimony, affidavits, and other evidence is excluded from court consideration when an issue regarding jury misconduct is raised unless there is evidence of an improper outside influence brought to bear upon any juror. *Soliz v. Saenz*, 779 S.W.2d 929, 931 (Tex.App.— Corpus Christi 1989, writ denied). Although the rules do not define "outside influence," Texas courts have held it to be an influence emanating from outside the jury and its deliberations. *Id.* at 931–32; *Baley v. W/W Interests, Inc.*, 754 S.W.2d 313, 316 (Tex.App.—Houston [14th Dist.] 1988, writ denied).

Appellant filed a motion for new trial supported by an affidavit of juror Gertrude Smith. At the hearing on this motion, the trial court refused to admit Smith's testimony. Appellant made an informal bill of exceptions containing Smith's testimony that a juror who voted "no" on an issue was excluded from further participation in deliberations. Smith's testimony further indicated that Smith and another juror agreed to abstain on one issue unless they agreed with the remaining nine jurors on another issue, in which case they would automatically vote "yes" rather than abstain on the other issue.

This testimony does not indicate that an outside influence was improperly brought to bear upon the jury. Thus, the trial court properly refused to admit this evidence. We overrule sub-points of error 2(1)–(4).

■ In sub-point of error 2(5), appellant argues that the trial court's instructions misled the jury regarding the relationship between Moody and Three R Trust and that this constituted an impermissible comment on the weight of the evidence and an outside influence. Appellant does not cite, and we have not located, any authority for the novel proposition that an allegedly erroneous instruction, coupled with a trial court's refusal to submit a requested instruction, can constitute an "outside influence." Absent authority for such a holding, we refuse to find that the trial court's actions were an improper outside influence.

In point of error four, appellant claims the trial court erred in refusing to submit instructions which gave the jury guidance on the legal relationship among the parties. Specifically, appellant claims that one instruction constituted an impermissible comment on the weight of the evidence and that the instructions submitted misled the jury about the legal relationship between Moody and the Three R Trust.

■ The trial court has considerably more discretion in submitting instructions than it has in submitting questions. *Harris v. Harris*, 765 S.W.2d 798, 801 (Tex. App.—Houston [14th Dist.] 1988, writ denied). The only function of an explanatory instruction is to aid and assist the jury in answering the issues submitted. *Id.* After examining the entire charge, we may find that an instruction constitutes an impermissible comment on the weight of the evidence if we determine that the judge assumed the truth of a material controverted fact, or exaggerated, minimized, or withdrew some pertinent evidence from the jury's consideration. *See Lively Exploration Co. v. Valero Transmission Co.*, 751 S.W.2d 649, 653 (Tex.App.—San Antonio 1988, writ denied). To constitute reversible error, the comment must be one that caused or probably caused rendition of an improper judgment. *Id.;* TEX.R.APP.P. 81(b)(1). Incidental comments are permissible when they are necessary or proper parts of an explanatory instruction or definition. *See Lively Exploration Co.*, 751 S.W.2d at 653.

■ Appellant complains about the following instruction:

You are instructed that when no contract exists between the owner of property and a person performing work and/or supplying material and services in connection with construction on the property, the person performing the work and/or supplying the material and services has no cause of action against the owner of the property.

Appellant contends this instruction was a comment on the weight of the evidence because it suggests there was no contract between appellee and the Three R Trust. We do not find that this instruction suggests to the jury the trial judge's opinion concerning a matter about which the jury was asked. *See Texas Gas Exploration Corp. v. Broughton Offshore Ltd. II*, 790 S.W.2d 781, 788 (Tex.App.—Houston [14th Dist.] 1990, no writ). The jury was asked whether Balentine had authority to agree and did agree with EMC for EMC to perform services and provide materials for Moody d/b/a Moody Interests. The instruction suggests that, if there is no contract between EMC and Three R Trust, EMC has no cause of action against Three R Trust. It does not suggest that the jury find a contract between EMC and Moody d/b/a Moody Interests. Thus, we find no impermissible comment on the weight of the evidence.

■ Appellant did not claim in the trial court and does not claim on appeal that this instruction is an incorrect statement of the law. Appellee, however, cites *Carr v. Norstok Bldg. Systems*, 767 S.W.2d 936, 942 (Tex.App.—Beaumont 1989, no writ), as support for its claim that this instruction is a correct statement of the law. We find appellee's reliance on *Carr* misplaced. In *Carr*, there was a written contract between a prime contractor and a subcontractor. *Id.* The court asserted that no privity of contract existed in this situation between an owner of property and subcontractors who were hired by the prime contractor. *Id.* Based on this lack of privity, the court held there was no cause of action as between the owner and the subcontractor.

*Id.* The court did not hold, and could not hold, that a contractor never has a cause of action against a property owner absent a written contract between the owner and the contractor. Where there is no written contract, a party may seek to recover the value of services rendered and materials provided in quantum meruit. *See Kittyhawk Landing Apartments III v. Anglin Const. Co.,* 737 S.W.2d 90, 92 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). The instruction submitted in the instant case distorts the holding in *Carr* and is an incorrect statement of the law. Although we must uphold the instruction based on the type of error asserted by appellant, we do not approve of this incorrect instruction.

Appellant also complains about the following instruction:

> You are instructed that one who acts for another in making a contract must disclose his agency and identify his principal in order to avoid being deemed party to the contract and liable thereon, and such duty of disclosure clearly lies with the agent alone, so that a third party with whom the agent deals has no duty to discover the identity of the principal.

Appellant admits this is a correct statement of the law when the agency has not been disclosed, but claims this instruction is incorrect where the agency has been disclosed. Appellant contends this instruction suggested to the jury that EMC had no duty to discover the identity of Balentine's principal.

Appellant objected to this instruction on the grounds that it did not relate to any issue in the case and that it was a comment on the weight of the evidence. Appellant argued that this instruction indicated to the jury the court's finding that Moody acted as a principal for Three R Trust. Appellant did not claim in the trial court that the instruction was incorrect nor did they request an instruction concerning a party's duty to ascertain the scope of authority where the agency has been disclosed. A complaint about a defect in an instruction is waived unless specifically included in the objections. TEX.R.CIV.P. 274. Thus, appellant has waived error as to the accuracy of the law set out in this instruction.

Furthermore, whether or not Moody was an agent for Three R Trust was not an issue before the jury. Thus, this instruction could not have been a comment on the weight of the evidence concerning Moody's agency for the trust. The only agency issue before the jury was the question whether Balentine had actual or apparent authority to enter an agreement with EMC on behalf of Moody d/b/a Moody Interests. Appellant did not object to this instruction on the ground that it was a comment on the weight of the evidence concerning Balentine's agency relationship with Moody. Thus, appellant waived any error in this regard.

Appellant further challenges the trial court's refusal to submit the following requested instruction:

> You are instructed that the Three R Trust and the Three R Trusts are separate entities from Robert L. Moody, Individually, the same way that a corporation, for example, American National Insurance Company, is a separate entity from Robert L. Moody. Actions taken on behalf of such entities are taken in a representative capacity and not in an individual capacity.

■■■■ A trial court has great discretion in submitting instructions and definitions to the jury. *Harris v. Harris,* 765 S.W.2d 798, 801 (Tex.App.—Houston [14th Dist.] 1989, writ denied). Any error in failing to instruct is reversible only if it caused or probably caused the rendition of an improper verdict. *See* TEX.R.APP.P. 81(b)(1). Thus, the question on appeal is whether the instruction was reasonably necessary to enable the jury to render a proper verdict. *Johnson v. Whitehurst,* 652 S.W.2d 441, 447 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

■■■■ Even if we were to find error by the trial court in refusing to submit the requested instruction, any such error would not be reversible. Appellant presented evidence indicating that Three R Trust was separate from Moody. Had the jury believed appellant's evidence, rather

than appellee's, the jury could have answered "No" to jury question two, signifying that they did not find an agreement between EMC and Moody. We do not agree that the requested instruction was necessary for the jury to answer "No" to this question. Thus, we overrule point of error four.

In point of error three, appellant claims the trial court erred in submitting a special issue on attorney's fees since appellee was unable to segregate its fees among claims that went to the jury from those that did not. Under this general point, appellant raises the following sub-points: (1) appellee could not segregate fees attributable to foreclosure on a mechanic's and materialman's lien and usury from those on a contract action; (2) appellee could not describe the nature and extent of work done by para-professionals which were sought and recovered as attorney's fees; (3) the trial court erred in failing to grant a new trial on this point; (4) the trial court erred in failing to sustain a motion for judgment n.o.v.; (5) unless appellee could segregate fees, it offered no evidence upon which the jury could sustain its verdict; and (6) since appellee did not establish the "professional nature" of services rendered by para-professionals or the reasonableness of time spent traveling, watching the trial, or researching the matter not at issue in the case, there is insufficient evidence upon which to support the jury verdict.

Appellant contends that appellee's evidence of attorney's fees included evidence of fees for work on claims for which fees are not recoverable. Thus, citing *American Nat'l Bank & Trust Co. v. First Wisconsin Mortgage Trust*, 577 S.W.2d 312, 320 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.), appellant asserts that appellees offered no evidence supporting recovery of fees. Although *American National Bank* and other cases have held that evidence without segregation of attorney's fees on claims for which fees are not recoverable is no evidence of attorney's fees and requires rendition, the supreme court has disapproved this line of case law. *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 10–12 (Tex.1991). Where an award of attorney's fees is erroneously based on evidence of unsegregated fees, the supreme court requires a remand on the issue of attorney's fees. *Id.* at 10–12.

A party may recover attorney's fees only if permitted by contract or by statute. *New Amsterdam Cas. Co. v. Texas Indus., Inc.*, 414 S.W.2d 914, 915 (Tex. 1967); *4M Linen & Uniform v. W.P. Ballard & Co.*, 793 S.W.2d 320, 327 (Tex. App.—Houston [1st Dist.] 1990, no writ). If the case involves claims for which attorney's fees are recoverable and claims for which attorney's fees are not recoverable, the authorized fees must be segregated from the fees connected to the other claims. *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex.1991); *Paramount Nat'l Life Ins. Co. v. Williams*, 772 S.W.2d 255, 266 (Tex.App.— Houston [14th Dist.] 1989, writ denied). A party need not, however, segregate attorney's fees when the claims arise out of the same transaction and are so interrelated that they involve proof of essentially the same facts. 822 S.W.2d at 11–12.

Appellee asserts that we need not reach the issue of segregation of fees because appellant waived any error in this regard. Appellant did not object to the admission of evidence of fees that it now claims are not recoverable. Instead, appellant objected to the jury issue on attorney's fees on the ground that appellees failed to segregate the fees for work on the contract claims from those for work concerning foreclosure of the mechanics and materialman's lien. Appellee argues that, if appellant considered this evidence objectionable, he had a duty to object to this evidence at the first opportunity, or waive any objection. *Osoba v. Bassichis*, 679 S.W.2d 119, 123 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Houts v. Barton*, 657 S.W.2d 924, 926 (Tex.App.—Houston [1st Dist.] 1983, no writ).

In *Osoba*, the appellant alleged no evidentiary basis for a division of the attorney's fees between the successful and unsuccessful plaintiffs and between the causes of action that allow recovery of

attorney's fees and those causes of action that do not. 679 S.W.2d at 123. The court found evidence of attorney's fees, but no evidence of attorney's fees incurred as to each cause of action and as to each individual. *Id.* Nevertheless, the court held that appellant's lack of objection to the admission of the evidence resulted in waiver of such objection and that the evidence presented was a sufficient basis for the jury's award. *Id.*

Unlike the appellant in *Osoba,* appellant did object to the jury issue claiming no evidence supported it because appellee had failed to segregate the attorney's fees. In *Stewart Title,* appellant claimed error in the submission of an issue on attorney's fees where there was no segregation of fees allocable to each of the original defendants. 822 S.W.2d at 10–11. Appellant did not object to the admission of the evidence and objected to the issue on the ground that there was no segregation of the attorney's fees. *Stewart Title Guaranty Co. v. Sterling,* 772 S.W.2d 242, 248 (Tex.App.—Houston [14th Dist.] 1989), *rev'd,* 822 S.W.2d 1 (Tex.1991). The supreme court found this to be a sufficient objection to preserve error. 822 S.W.2d at 10–11. Thus, if a party objects to the submission of an issue on attorney's fees on the ground of lack of segregation, this party has sufficiently preserved error despite a lack of objection to the admission of the evidence of unsegregated fees.

In this case, appellant objected to the jury issue on attorney's fees on the ground that the lack of segregation of fees constitutes no evidence supporting the submission of such an issue. This objection preserved appellant's complaint on appeal. Thus, we turn to the issue of segregation.

■ Appellee first claims that the same set of facts and circumstances formed the basis for every theory of recovery pled thereby bringing them within the exception to the rule requiring segregation. Furthermore, appellee notes that the fees for preparation of the lien were clearly segregated from the fees for preparation and trial of its other theories. Moran testified that attorney Michael Danziger prepared this

lien and charged EMC approximately $1,200.00. This fee was not included in appellee's invoices or testimony concerning attorney's fees sought in the instant lawsuit. Appellee notes that it sought foreclosure of the lien because the property description included with the "Affidavit Claiming a Lien" stated that the property was owned by Robert Moody, Sr. and Three R Trust. Thus, appellee argues it sought Moody's interest in seeking to foreclose this lien. Appellee admits that, at trial, the evidence showed that Three R Trust owned the property. Because Three R Trust was not a party to the lawsuit, appellant sought and received a directed verdict on this claim. We find no evidence supporting appellee's argument that the facts or circumstances regarding the lien were so intertwined with those regarding appellee's contract claims that they are inseparable.

The invoices submitted as exhibits at trial, however, indicate an unspecified amount of time researching issues regarding this lien. In particular, invoice number 1–2/5–1803, dated February 17, 1987, mentions research regarding statute of limitations which may or may not relate to the Three R Trust. This invoice reflects a number of other services rendered without any breakdown of hours or charges for individual services. This invoice indicates total professional fees of $713.25 and a total charge of $862.86. Invoice number 4–2117, dated December 1, 1987, mentions research regarding foreclosure of the lien, among other services rendered. This invoice also contains no breakdown of hours for the various services and reflects a total charge of $236.10. Likewise, invoice number 5/4–2197, dated January 7, 1988, mentions research regarding the lien, among other services rendered, with no breakdown of hours or charges. The total charge on this invoice is $783.20. Because the invoices and the testimony regarding these charges do not segregate the fees charged for services rendered regarding appellee's contract claims from those services rendered regarding the lien, for which attorney's fees are not recoverable, we sustain point

of error three as to this claim of no segregation of fees.

Appellant also asserts that appellee failed to segregate its fees for services performed in connection with a claim of usury, which appellee never raised as a defense. The invoices with no breakdown of hours or charges for individual services do not mention any activities concerning a claim of usury. Invoice number 2844, dated September 6, 1989, however, reflects a total of four hours of research on usury issues with a total charge for professional fees on this claim of $552.00 and a total charge, including other fees and costs, of $2,148.10. Thus, the fees for services regarding the claim of usury were segregated. We overrule point of error three insofar as it relates to fees for the usury claim.

 Appellant also argues there is insufficient evidence to support the recovery of fees for work performed by para-professionals. In *Gill Sav. Ass'n v. International Supply Co., Inc.*, 759 S.W.2d 697, 702 (Tex.App.—Dallas 1988, writ denied), the court held that compensation for a legal assistant's work may be separately assessed and included in the award of attorney's fees if a legal assistant performs work that has traditionally been done by any attorney. To recover such amounts, the court held that the evidence must establish the following:

(1) that the legal assistant is qualified through education, training or work experience to perform substantive legal work;

(2) that substantive legal work was performed under the direction and supervision of an attorney;

(3) the nature of the legal work which was performed;

(4) the hourly rate being charged for the legal assistant; and

(5) the number of hours expended by the legal assistant.

*Id.*

Here, the evidence does not establish the qualifications of the para-professionals, the type of work performed, the hourly rate for these persons, or the number of hours expended. The various invoices merely list the total cost for unspecified services performed by a law clerk or legal assistant. Under *Gill*, we hold that this evidence is legally insufficient to support the award of these fees. The total amount of fees charged for para-professionals was $382.00. Thus, we sustain point of error three insofar as it claims the trial court erred in awarding fees for para-professionals.

Because appellee failed to segregate its fees for work performed regarding foreclosure of the mechanics and materialman's lien from its fees relating to the contract claims, we reverse the judgment and remand the cause to the trial court for a hearing to determine the attorney's fees that are recoverable for services rendered on the contract claims. Furthermore, the trial court shall include no fees for para-professional services rendered in the award because no evidence supports such an award. We affirm the remainder of the judgment.