Affirmed and Opinion filed July 21, 2005









Affirmed
and Opinion filed July 21, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01199-CV

____________

 

BENCON MANAGEMENT &
GENERAL CONTRACTING, INC., 

GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA, AND 

PENNSYLVANIA GENERAL INSURANCE COMPANY, Appellants

 

V.

 

BOYER, INC., Appellee

____________________________________________________________

 

On Appeal from the 165th District Court

Harris County, Texas

Trial Court Cause No. 01-07974

____________________________________________________________

 

O P I N I O N








This case arises out of a dispute
between a general contractor and a subcontractor who performed work on a city
project.  The general contractor and the
sureties on the payment bond appeal the trial court=s judgment in
favor of the subcontractor on its breach-of-contract and bond claims and its
claim for interest under Chapter 2251 of the Texas Government Code.  The general contractor and sureties challenge
the sufficiency of the evidence regarding (1) compliance with certain alleged
conditions precedent in the subcontractor=s contract, (2)
the subcontractor=s timely performance of its contract, and (3) the attorney=s fee
award.  The general contractor and the
sureties also assert the trial court erred in denying their motion for mistrial
based on the subcontractor=s alleged violation of an order in limine.  We conclude that the subcontractor did not
need to prove compliance with the alleged conditions precedent, that the
evidence as to the challenged issues is sufficient to support the judgment, and
that the trial court did not err in denying the motion for mistrial.
Accordingly, we affirm the trial court=s judgment.

I.  Factual and Procedural Background

Effective February 2, 1999,
appellant Bencon Management & General Contracting, Inc. (ABencon@), as general
contractor, entered into a construction contract with the Metropolitan Transit
Authority of Harris County, Texas (AMetro@), as
owner.  Under this contract (the APrime Contract@), Bencon
promised to construct various roadway improvements on Louisiana Street from
Lamar to Congress in downtown Houston, including but not limited to reinforced
concrete pavement, storm sewers, sanitary sewers, waterlines, sidewalks,
traffic signals, provisions for communication conduits, street lighting, tree
preservation, tree planting, irrigation, electrical service, and transit
amenities (the AProject@). 

On February 3, 1999, Bencon sent
a purchase order to appellee Boyer, Inc., accepting Boyer=s bid to be the
subcontractor for the tunneling work for the storm-sewer part of the
Project.  This one-page purchase order
and the attached one-page bid submitted by Boyer constitute the subcontract
between Boyer and Bencon (the ASubcontract@).  The Subcontract
states that Boyer will Acomply with the project=s plans, Specs
[sic] and contract conditions issued by Metro to [Bencon] as applicable to
[Boyer=s] work.@  The Subcontract also states that Boyer=s A[w]ork will take
approximately 160 working days to complete end to end, including manholes.@  








Metro gave
Bencon notice to proceed with its work on the Project, effective February 27,
1999.  There is evidence that on March 4,
1999, Metro approved Boyer to be the tunneling subcontractor on the project and
that, because of difficulties encountered with a live electrical line in a duct
at Congress Street, Boyer could not break ground on its tunneling work until
May 20, 1999.  There is also testimony
that Boyer finished its work on March 21, 2000. 
Because of unexpected problems with Atiebacks@ encountered during the
tunneling, Metro granted Bencon an extension of 84 calendar days.  

Because Bencon
had not timely paid Boyer amounts owed under the Subcontract, Boyer sent out
statutory notices on the payment bond, as to which appellants General Accident
Insurance Company of America (AGeneral@) and Pennsylvania General Insurance Company (APennsylvania General@) are the sureties.  Boyer filed this suit, alleging that the
Bencon Parties[1]
had not paid it more than $200,000 due and owing under the Subcontract.  Not long after Boyer filed suit, Bencon paid
Boyer $126,686.80.  Nonetheless, Boyer
alleged that the Bencon Parties still owed Boyer $62,562 in retainage and $18,774.83
for work under a change order.  In
addition to asserting this breach-of-contract claim against Bencon and this
payment-bond claim against the sureties, Boyer also asserted a claim for
interest under Chapter 2251 of the Texas Government Code (APrompt Payment Claim@).  In response, Bencon asserted a counterclaim
against Boyer, alleging that Boyer=s breach of the Subcontract by its alleged lengthy delay in
performing its work thereunder resulted in $533,254.46 in damages to
Bencon.  The Bencon Parties have not
alleged that Boyer failed to complete the work required under its Subcontract
or that this work was not performed in a workmanlike manner.  After a five-day jury trial, the jury
unanimously found as follows:








!         Bencon
failed to comply with the Subcontract.

!         Bencon=s failure to comply was not
excused by any alleged failure of Boyer to comply with a material obligation of
the Subcontract.

!         Bencon=s failure to comply with the
Subcontract resulted in actual damages of $81,336.83 to Boyer.

!         A
reasonable fee for the necessary services of Boyer=s attorneys for preparation and
trial is $282,773.33.  A reasonable fee
for the necessary services of Boyer=s
attorneys for an appeal to the court of appeals is $20,000. A reasonable fee
for the necessary services of Boyer=s
attorneys for an appeal to the Texas Supreme Court is $40,000.

!         Boyer
did not fail to comply with the Subcontract by failing to complete the contract
within a reasonable time.[2]

The Bencon Parties filed a motion to disregard
jury answers and for judgment notwithstanding the verdict.  Boyer filed a motion to disregard one jury
finding regarding its Prompt Payment Claim. 
The trial court granted Boyer=s motion,
denied the Bencon Parties= motion, and
except for one disregarded finding regarding the Prompt Payment Claim, the
trial court rendered judgment on the jury=s
verdict.  The Bencon Parties= motion
for new trial was overruled by operation of law.  On appeal, the Bencon Parties challenge the
legal and factual sufficiency of the evidence to support some of the jury=s
findings.

II. 
Standards of Review








In this case, the Bencon
Parties preserved error as to their no-evidence issues by their motion for
judgment notwithstanding the verdict and by their motion for new trial.  Regardless of what motion a party uses to preserve
a no-evidence challenge to fact findings, the same standard of review
applies.  City of Keller v. Wilson,
__ S.W.3d __, __, No. 02-1012, 2005 WL 1366509, at *11 (Tex. June 10,
2005).  In analyzing a no-evidence issue,
we must consider evidence in the light most favorable to the challenged finding
and indulge every reasonable inference that would support it.  See id., __ S.W.3d at __, 2005
WL 1366509, at *10.  We must credit
favorable evidence if a reasonable factfinder could and disregard contrary
evidence unless a reasonable factfinder could not.  See id., __ S.W.3d at __, 2005
WL 1366509, at *14.  We must determine
whether the evidence at trial would enable reasonable and fair-minded people to
find the facts at issue.  See id.  The factfinder is the sole judge of the
credibility of the witnesses and the weight to give their testimony.  See id., __ S.W.3d at __, 2005
WL 1366509, at *8.  This court must
sustain a no-evidence challenge if the record shows one of the following: (1) a
complete absence of a vital fact, (2) rules of law or evidence bar the court
from giving weight to the only evidence offered to prove a vital fact, (3) the
evidence offered to prove a vital fact is no more than a scintilla, or (4) the
evidence establishes conclusively the opposite of the vital fact.  See id. __ S.W.3d at __, 2005
WL 1366509, at *2.   

When
reviewing a challenge to the factual sufficiency of the evidence, we examine
the entire record, considering both the evidence in favor of, and contrary to,
the challenged finding.  Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986).  After
considering and weighing all the evidence, we set aside the fact finding only
if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.  Pool v.
Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).  The trier of fact is the sole judge of the
credibility of the witnesses and the weight to be given to their
testimony.  GTE Mobilnet of S. Tex. v.
Pascouet, 61 S.W.3d 599, 615B16 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).  We may not substitute our own
judgment for that of the trier of fact, even if we would reach a different
answer on the evidence.  Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998).  The amount of evidence necessary to affirm a
judgment is far less than that necessary to reverse a judgment.  Pascouet, 61 S.W.3d at 616. 








In construing Boyer=s
obligations under the Subcontract, our primary concern is to ascertain and give
effect to the intentions of the parties as expressed in the Subcontract.  Kelley‑Coppedge, Inc. v. Highlands
Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998). 
To ascertain the true intentions of the parties to the Subcontract, we
examine the entire agreement in an effort to harmonize and give effect to all
of the provisions of the contract so that none will be rendered
meaningless.  MCI Telecomms. Corp. v.
Texas Utils. Elec. Co., 995 S.W.2d 647, 652 (Tex. 1999).  When a written contract is so worded that it
can be given a certain or definite legal meaning or interpretation, it is not
ambiguous, and courts construe it as a matter of law.  American Mfrs. Mut. Ins. Co. v. Schaefer,
124 S.W.3d 154, 157 (Tex. 2003).  Whether
a contract is ambiguous is a question of law for the court. Heritage Res.,
Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996).  A contract is ambiguous when its meaning is
uncertain and doubtful or is reasonably susceptible to more than one
interpretation.  Id.  We cannot rewrite the Subcontract or add to
its language under the guise of interpretation. 
See American Mfrs. Mut. Ins. Co., 124 S.W.3d at 162.  Rather, we must enforce the Subcontract as
written.  See Royal Indem. Co. v.
Marshall, 388 S.W.2d 176, 181 (Tex. 1965). 


III.  Issues
and Analysis

A.        Did Boyer have to prove compliance with various alleged
conditions precedent?








In their first and second issues, the Bencon
Parties assert there is legally and factually insufficient evidence to prove
that Boyer complied with various alleged conditions precedent in the
Subcontract.  Because Boyer pleaded that
all conditions precedent to its recovery against the Bencon Parties had been
performed or had occurred, Boyer was required to prove only the conditions
precedent that the Bencon Parties specifically denied.  See Tex.
R. Civ. P. 54; Community Bank & Trust v. Fleck, 107 S.W.3d
541, 542 (Tex. 2002).  The Bencon Parties= Second
Amended Answer does not contain any specific denials as to the alleged
conditions precedent asserted by the Bencon Parties under their first and
second issues.  See Tex. R. Civ. P. 54; Coastal Terminal
Operators v. Essex Crane Rental Corp., No. 14-02-00627-CV, 2004 WL 1795355,
at *7 (Tex. App.CHouston
[14th Dist.] Aug. 12, 2004, pet. denied) (holding that general statement by
defendant denying that all conditions precedent have occurred or been performed
is not sufficient under Rule 54 to require plaintiff to prove any alleged
conditions precedent) (mem. op.). In their supplemental answer, the Bencon
Parties assert the following:

Plaintiff erroneously now contends that the
entire contract between Defendant Bencon (general contractor) and Metro (Owner)
somehow applies to Plaintiff (subcontractor) in this case.

In such an unlikely event, Defendants plead
that Plaintiff has failed to comply with the following conditions precedent to
recovery in this case: [listing various alleged conditions precedent, some of
which are asserted by the Bencon Parties under their first and second issues on
appeal].

Unless this language constitutes a specific denial
of the conditions precedent asserted under their first and second issues, Boyer
did not have to prove compliance with these conditions precedent.  See Tex.
R. Civ. P. 54; Community Bank & Trust, 107 S.W.3d at
542.  In this answer, the Bencon Parties
assert that the entire Prime Contract does not apply to Boyer, but that, in the
unlikely event that the entire Prime Contract does apply to Boyer, then the
Bencon Parties allege Boyer has not complied with various conditions precedent.  The trial court never ruled on this issue,
and the jury charge takes no position as to how much, if any, of the Prime
Contract applies to Boyer=s
performance under the Subcontract.  At
trial, Mark Boyer=s
testimony indicated that Boyer agreed in the Subcontract to comply with the
specifications and contract conditions from the Prime Contract that apply to
Boyer=s work
under the Subcontract.  On the other
hand, under cross-examination, Tommy Mazingo, Boyer=s project
manager during part of the Project, testified that the entire Prime Contract
applied to Boyer.  Notwithstanding this
testimony, if the Subcontract is unambiguous, then its construction and
interpretation are a question of law to be resolved by this court.  See American Mfrs. Mut. Ins. Co., 124
S.W.3d at 157.  













The Subcontract states, in pertinent part: ASubcontractor
to comply with the project=s plans,
Specs [sic] and contract conditions issued by Metro to the G.C. [Bencon] as
applicable to the Subcontractor=s work.@  After considering both the Subcontract and
the Prime Contract, we conclude that, as a matter of law, under the unambiguous
language of the Subcontract, Boyer promised to comply only with the parts of
the Prime Contract that contain project plans, specifications, or contract
conditions applicable to Boyer=s
work.  See Seale v. Roy M. Mitchell Contracting Co., 321 S.W.2d 149, 150B51 (Tex. Civ. App.CAustin 1959, writ ref=d) (holding, in Texas Supreme Court
precedent, that subcontract did not incorporate dispute-resolution provision
contained in prime contract, because subcontract incorporated only the
provisions of the prime contract applicable to the performance of subcontractor=s work); LeBlanc, Inc. v. Gulf
Bitulithic Co., 412 S.W.2d 86, 93 (Tex. Civ. App.CTyler 1967, writ ref=d n.r.e.) (stating that subcontract
that incorporated the provisions of prime contract only Ainsofar as they are applicable to
this Subcontractor@ did not incorporate warranty, repair, indemnity, and
arbitration provisions of the prime contract into the subcontract); Patrick
J. Ruane, Inc. v. Parker, 8 Cal. Rptr. 379, 385 (Ct. App. 1960) (holding
that subcontract did not incorporate prime contract=s conditioning of right to payment
upon issuance of certificate of completion, because subcontract incorporated
the conditions of the prime contract Ainsofar as they are applicable to
this particular work@).  Because
parts of the Prime Contract do not fall into this category, the entire Prime
Contract does not apply to Boyer.  LeBlanc, Inc., 412 S.W.2d at 93 (stating that
subcontract did not incorporate all provisions of the prime contract into
subcontract because subcontract incorporated the provisions of the prime
contract only Ainsofar as they are applicable to
this Subcontractor@).  Inasmuch
as the Bencon Parties only pleaded failure to comply with certain alleged
conditions in the Prime Contract in the event that the entire Prime Contract
applies to Boyer, and because the entire Prime Contract does not apply to
Boyer, the Bencon Parties have not specifically denied the alleged conditions
precedent in question, and Boyer did not have to prove compliance therewith.  See Tex.
R. Civ. P. 54; Community Bank & Trust, 107 S.W.3d at 542.
Accordingly, we overrule the Bencon Parties= first
and second issues.[3]

B.        Is there legally and factually sufficient evidence to prove
that Boyer timely performed under the Subcontract?








In their third, fifth, and seventh issues, the
Bencon Parties assert the evidence is legally and factually insufficient to
prove that Boyer timely performed under the Subcontract. Neither in the trial
court nor on appeal, have the Bencon Parties asserted that time is of the
essence as a matter of law under the Subcontract; rather, they assert the
evidence is legally and factually insufficient to prove that Boyer timely
performed under the Subcontract. The jury charge did not require the jury to
find that Boyer had timely performed the Subcontract to find Bencon liable
under the Subcontract.  Because some
essential elements of Boyer=s
breach-of-contract claim were submitted to and found by the jury and because,
without request or objection, the jury charge did not require a finding as to
the element of timely performance by Boyer, the trial court is deemed to have
made a such a finding in support of the judgment if there is factually
sufficient evidence to support such a finding. 
See Tex. R. Civ. P.
279; Ramos v. Frito‑Lay, Inc., 784 S.W.2d 667, 668B69 (Tex.1990);
Jamar v. Patterson, 910 S.W.2d 118, 120B23 (Tex.
App.CHouston
[14th Dist.] 1995, writ denied).  The
Bencon Parties assert that there is no evidence or, alternatively, factually
insufficient evidence, to support such a finding.  Similarly, the Bencon Parties assert that
they proved liability on their counterclaim for delay as a matter of law or,
alternatively, that the jury=s finding
against such liability is against the great weight and preponderance of the
evidence.

Because the Bencon Parties did not object to the
articulation of what Boyer must do to timely perform the Subcontract as set
forth in the jury charge, we measure the sufficiency of the evidence in this
regard using the charge=s
definition of timely performance.  See
City of Fort Worth v. Zimlich, 29 S.W.3d 62, 71 (Tex. 2000) (holding that
appellate court must review sufficiency of evidence based on un-objected to
definitions or instructions in the jury charge, whether or not they accurately
state the law).  The relevant parts of
the jury charge state that Boyer had to complete the Subcontract Awithin a
reasonable time.@  Therefore, we must determine whether there is
legally and factually sufficient evidence to support a finding that Boyer
completed the Subcontract within a reasonable time.

The Subcontract states that Boyer=s work Awill take
approximately 160 working days to complete end to end, including manholes.@  The record contains evidence of the
following:

!         Five working days equals seven calendar days, so that 160
working days equals 224 calendar days.

!         Bencon requested a 116-day extension from Metro based on
delays in the tunneling work due to underground obstructions, stating that A[i]n assessing the delay
encountered by our Subcontractor Boyer, Inc[.], we come to the conclusion that
116 working day extensions [sic] of time, and associated additional costs are
warranted.@ 

!         In response to this request, Metro granted an extension of
84 calendar days.

!         The sum of 224 calendar days and 84 calendar days is 308
calendar days.

!         Metro gave Bencon notice to proceed with the work on the
Project effective February 27, 1999.

!         On March 4, 1999, Metro approved Boyer as a subcontractor on
the Project.

 








!         In March 1999, Boyer discovered that a live utility wire
from Houston Lighting & Power Company (AHL&P@) was in a utility duct at
Congress and Louisiana, and discussed this conflict with Metro.

!         Boyer could not proceed with the tunneling until HL&P
relocated the live electrical wire so that it did not pass through the duct in
question.  

!         The purpose of Bencon hiring Boyer as the tunneling
subcontractor was to have Boyer deal with utilities conflicts because of Boyer=s skill and experience in
this regard.  

!         Despite Boyer=s prompt notice to
HL&P of this utility conflict, HL&P did not complete the relocation
until May 19, 1999.

!         HL&P=s failure to complete relocation of its electrical
wire until May 19, 1999, was not Boyer=s fault.

!         Boyer could not have started its tunneling work before May
20, 1999.

!         Boyer broke ground and began tunneling on May 20, 1999, and
did not stop working until its work was complete on March 24, 2000.

!         From May 20, 1999 to March 24, 2000, is 309 calendar days.

!         In July 1999, a representative of Bencon wrote a letter to a
representative of Metro regarding the Project. 
This letter states that A[a]ll activities remain on course and time.@ 

!         When Boyer finished its work on March 24, 2000, Bencon was
five blocks behind Boyer performing aspects of the Prime Contract that Bencon
performed itself.  

!         On March 29, 2000, Metro inspected and completely accepted
Boyer=s work.

!         Boyer demobilized and removed its personnel from the site of
the Project by March 31, 2000.

!         The first time Bencon ever indicated to Boyer that it
believed Boyer may have delayed the Project was in a letter from Bencon to
Boyer dated March 21, 2000. 

!         Bencon substantially completed the entire Prime Contract on
January 31, 2001.

!         Because Metro granted Bencon a second 84-day extension,
unrelated to Boyer=s work, under these
extensions, Bencon completed the Prime Contract on time, and Metro did not
assess any delay damages against Bencon under the Prime Contract.








!         Metro has paid Bencon for the part of Boyer=s work that Bencon has not
paid.  Metro had no complaints about
Boyer=s work, which was very
good.

 

Under
the applicable standard of review, we conclude that the evidence is legally
sufficient to support a fact finding that Boyer completed its obligations under
the Subcontract in a reasonable time.

As to factual sufficiency, there is conflicting
evidence on various issues. Further, Alex Baaklini, the President of Bencon,
testified that, although Bencon did not tell Boyer to start work on February 3,
1999, the date of the Subcontract, and although Metro had not yet approved
Boyer as a subcontractor, he expected Boyer to start working on February 3,
1999, which he considered the start date of Boyer=s
performance.  Baaklini also testified
that Bencon wanted to increase its profits by completing the Prime Contract six
months ahead of schedule and that, based on this desired completion date, Bencon
finished the Prime Contract four months late. 
Baaklini testified that Boyer=s delay
in starting and completing its work under the Subcontract caused a four-month
delay.  However, Baaklini admitted that
he never gave Boyer a schedule for its work under the Subcontract and that he
never told Boyer that Bencon wanted to complete the Prime Contract six months
early.  Though Baaklini did testify that
Boyer did not timely perform the Subcontract, the jury is the sole judge of the
credibility of the witnesses.  See Pascouet, 61 S.W.3d at 615B16.  








On this record, after considering and weighing all
the evidence, we conclude the evidence that Boyer completed the Subcontract
within a reasonable time is not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. 
See Pool, 715 S.W.2d at 635. 
Accordingly, we deem the trial court to have made a finding that Boyer
completed the Subcontract within a reasonable time.  See Tex.
R. Civ. P. 279;  Ramos, 784
S.W.2d at 668B69; Jamar, 910 S.W.2d at
120B23.  We likewise reject the Bencon Parties=
arguments that they conclusively proved as a matter of law that Boyer failed to
complete the Subcontract within a reasonable time.  We also conclude that the jury=s finding
of no liability for Boyer as to the delay counterclaim is not against the great
weight and preponderance of the evidence. 


Having rejected both the legal and factual
sufficiency challenges regarding the timeliness of Boyer=s
performance under the Subcontract, we overrule the Bencon Parties= third,
fifth, and seventh issues.

C.        Is the evidence legally and factually sufficient to support
the jury=s findings as to
reasonable and necessary attorney=s fees?

In their fourth issue, the Bencon Parties assert
several challenges against the trial court=s
rendition of judgment on the jury=s verdict
as to attorney=s fees.  First, they assert Boyer cannot recover
attorney=s fees
because it cannot recover on its contract claim for the same reasons asserted
by the Bencon Parties in support of their first issue.  This argument fails for the same reasons set
forth in the foregoing discussion of the first issue.








The Bencon Parties also assert that Boyer had to
segregate its proof as to the reasonableness of attorney=s fees
among its various claims as well as between fees incurred in connection with
affirmative claims and its fees for defending the Bencon Parties=
counterclaim.  After an attorney=s fees
expert testified, among other things, that the Ainextricably
intertwined@ exception to the segregation
requirement applies to Boyer=s proof
of reasonable and necessary attorney=s fees in
this case, the trial court properly addressed this issue as a matter of law,
ruling that the Ainextricably
intertwined@ exception applies.  See Air Routing Intern. Corp. (Canada) v.
Britannia Airways, Ltd., 150 S.W.3d 682, 687B88 (Tex.
App.CHouston
[14th Dist.] 2004, no pet.).  However,
when the trial court made this ruling, the Bencon Parties had not objected
regarding the alleged necessity of segregating proof of attorney=s
fees.  The following day, during trial
and out of the hearing of the jury, the Bencon Parties= counsel
asserted to the trial court that Aas a
matter of law they have to segregate their attorney=s fees .
. . I object to any fees going to the jury and I ask the [c]ourt to rule that
the attorney=s fees must be segregated.@  The trial court took this objection under
advisement but never ruled on it.  

At the charge conference, the trial court=s
proposed charge did not segregate the attorney=s fees as
to Boyer=s various
claims or as between its claims and its defense of the counterclaim.  The trial court asked counsel for the Bencon
Parties what objections the Bencon Parties had to the charge.  Their counsel responded by asserting several
objections, none of which involved segregation of attorney=s fees,
and then stated, AThat=s it,
Judge.  Those are my objections to the
Charge.@  Even if we presume for the sake of argument
that the trial court, in submitting the jury charge without segregation of
attorney=s fees,
might have implicitly overruled the segregation objection lodged the day
before, on this record, we conclude that the Bencon Parties waived error by
representing to the trial court that they had listed all of their charge
objections and by not including a segregation objection in this list.  Because the Bencon Parties did not object to
the lack of segregation of attorney=s fees in
the charge, the Bencon Parties waived their complaint.  See Green Intern., Inc. v. Solis, 951
S.W.2d 384, 389 (Tex. 1997) (holding that parties waived error regarding
failure to segregate attorney=s fees
because they did not object when the court=s charge
failed to segregate).  Therefore, we
reject the Bencon Parties=
challenge based on failure to segregate attorney=s fees.[4]








The Bencon Parties= main
argument is that the evidence is legally and factually insufficient to support
the jury=s finding
that $282,773.33 is a reasonable and necessary fee for services rendered by
Boyer=s
attorneys at the trial-court level.  In
this regard, they first assert that the evidence is legally and factually
insufficient to support an award based on the work of legal assistants.  Boyer=s
attorney=s fees
expert was its lead attorney, and she discussed both the services of the legal
assistants whose work formed part of the basis for the requested attorney=s fees
award, and also her supervision of the legal assistants.  She also testified that the hourly rates
charged for work performed by the legal assistants in this case are reasonable
and lower than the rates many law firms charge. 
The billing records submitted in evidence show the nature of the legal
work the legal assistants performed, the hourly rate being charged for their
services, and the number of hours worked by the legal assistants.  Applying the relevant standards of review, we
conclude that the evidence is legally and factually sufficient to support the
jury=s finding
as to reasonable and necessary attorney=s fees to
the extent it was based on work performed for Boyer by legal assistants. See
Moody v. EMC Servs., Inc., 828 S.W.2d 237, 248 (Tex. App.CHouston
[14th Dist.] 1992, writ denied) (listing factors to be considered in reviewing
sufficiency of award to extent it is challenged based on ability to recover
attorney=s fees
regarding services of legal assistants); Stewart Title Guar. Co. v. Aiello,
911 S.W.2d 463, 474B75 (Tex.
App.CEl Paso
1995) (holding evidence was legally and factually sufficient to support award
of reasonable attorney=s fees
based in part on work of legal assistants), rev=d in part
on other grounds, 941 S.W.2d 68 (Tex. 1997).  

The Bencon Parties also assert that the award of
over $282,000 in attorney=s fees
for work in the trial court is excessive because Boyer recovered only
$81,336.83 in actual damages.  Boyer
originally sued for more than $200,000, although Bencon paid $126,686,80
shortly after Boyer filed suit. 
Furthermore, Bencon asserted a counterclaim against Boyer seeking more
than $530,000 in damages.  Boyer=s
attorney=s fees
expert testified as follows:

!         Bencon=s counterclaim seeking
more than $530,000 was a very serious claim, and $530,000 was a huge amount of
money for Boyer.

!         Boyer=s attorneys sent out
various statutory notices to perfect Boyer=s payment-bond claim.

!         Boyer was surprised that Bencon asserted a counterclaim
based on delay, and Boyer was uncertain as to the basis of this claim.








!         Although Boyer never had to obtain an order compelling
discovery, Bencon initially produced only one box of documents, and Boyer=s counsel had to make
additional requests to Bencon=s counsel to obtain production of more documents,
thus generating more attorney=s fees.

!         Because Bencon produced so few documents, Boyer had to
propound significant requests and analyze large numbers of documents from Metro
and HL&P to try to piece together evidence regarding the whole Project and
Boyer=s place in it.

!         Boyer=s counsel also had to
prepare for and take depositions of three Bencon personnel, as well as prepare
for and defend the depositions of three Boyer personnel.

!         Invoices and fees summaries admitted in evidence show
$252,773.33 in billed fees up to a week before counsel=s testimony.  In the last week, at least $30,000 more in
fees had been generated for a total of $282,773.33.  

!         There were a couple of prior trial settings in the case in
which Boyer=s counsel did not know
that the trial court was not going to reach this case until the last few days
before the trial setting.  This
preparation for and delay of trial further increased the attorney=s fees.

!         Boyer also hired an expert in this case, although the expert=s fees are not included in
Boyer=s attorney=s fee request.  

Boyer=s counsel
testified as to the factors used to determine reasonableness of attorney=s fees,
the hourly rates of the billers, and the reasonableness of these hourly
rates.  Mark Boyer also testified that
the nature of Bencon=s delay
claim was difficult to pin down, and Bencon=s legal
theory changed frequently.  Boyer
testified that a judgment in Bencon=s favor
for half a million dollars could have put Boyer out of business.

Controverting much of the testimony of Boyer=s
attorney=s fee
expert, counsel for the Bencon Parties testified as follows:

!         A reasonable and necessary fee in this case would be $250
per hour for lawyers of twenty-two years= experience.

!         Counsel for the Bencon Parties will have billed 200 hours
for work in the trial court in this case; therefore, a reasonable and necessary
fee for this work would be $50,000.








!         Counsel for the Bencon Parties does not charge the client
for time worked by an associate or by legal assistants, and counsel has a
flat-fee arrangement capping his compensation at $20,000, plus any additional
amount Bencon may wish to pay, in its discretion, to counsel at the end of the
case.

Under the applicable standards of review, we
conclude the evidence is both legally and factually sufficient to support the
jury=s
findings as to reasonable and necessary attorney=s fees in
the trial court.  See Murrco Agency,
Inc. v. Ryan, 800 S.W.2d 600, 606B07 (Tex.
App.CDallas
1990, no writ) (rejecting excessiveness challenge to attorney=s fees
more than three times the actual damages recovered based on testimony of the
attorney=s fees
expert as to the time spent, skill required, and nature of the case, which
included defense of counterclaims for hundreds of thousands of dollars).  Accordingly, we overrule the Bencon Parties= fourth
issue.

C.        Did
the trial court err in denying the Bencon Parties= motion for mistrial?

In their sixth issue, the
Bencon Parties assert the trial court erred in denying their motion for
mistrial based on Boyer=s alleged
intentional violation of the trial court=s in
limine rulings.  Although the Bencon
Parties attach the alleged in limine ruling on which they base this issue in
the appendix to their appellate brief, this alleged ruling is not in our
appellate record.  With limited
exceptions not relevant here, an appellate court may not consider matters
outside the appellate record.  Nguyen
v. Intertex, Inc., 93 S.W.3d 288, 293 (Tex. App.CHouston
[14th Dist.] 2002, no pet.).  The
attachment of documents as exhibits or appendices to briefs is not formal
inclusion in the record on appeal and, therefore, the documents cannot be
considered.  See id.  Because the alleged in limine ruling on which
the Bencon Parties base their sixth issue is not in our record, we cannot
consider it.[5]








In any event, the Bencon Parties= trial
counsel did not object to the testimony in question C that the
Bencon Parties= trial counsel represents Bencon
or its employees or officers in a criminal matter.  Furthermore, the Bencon Parties= counsel,
acting as an expert witness as to attorney=s fees,
was himself the source of the alleged incurably prejudicial testimony.  After the Bencon Parties= counsel
made the statements, the trial court instructed the jury that Bencon, its
officers, and its owners have never been convicted of a crime.  The trial court=s
instruction to disregard cured any prejudice to the Bencon Parties from the
testimony of their trial counsel.  See
Weidner v. Sanchez, 14 S.W.3d 353, 363B65 (Tex.
App.CHouston
[14th Dist.] 2000, no pet.). 
Accordingly, we conclude the trial court did not abuse its discretion in
denying the Bencon Parties= motion
for mistrial, and we overrule their sixth issue.

                                                             IV.  Conclusion

Boyer did not have to
prove compliance with the alleged conditions precedent raised by the Bencon
Parties because the Bencon Parties did not assert a specific denial as to these
conditions.  The only denial that refers
to any of these alleged conditions does not take effect unless the entire Prime
Contract applies to Boyer, and it does not. 
The evidence is legally and factually sufficient to support a deemed
finding that Boyer performed under the Subcontract within a reasonable
time.  The evidence is also legally and
factually sufficient to support the jury=s
findings as to reasonable and necessary attorney=s
fees.  The trial court did not abuse its
discretion in denying the Bencon Parties= motion
for mistrial.

We affirm the trial court=s
judgment.

 

/s/        Kem Thompson Frost

Justice

 

Judgment
rendered and Opinion filed July 21, 2005.

Panel
consists of Justices Anderson, Hudson, and Frost.

 

 











[1]  In this opinion, we refer to Bencon, General, and
Pennsylvania General collectively as the ABencon Parties.@





[2]  The jury
also made various findings regarding perfection of the payment-bond claim and
the Prompt Payment Claim, but those findings are not relevant to this appeal.





[3]  We also note
that, even if the Bencon Parties=
supplemental answer had sufficiently pleaded failure to comply with the alleged
conditions precedent listed in that pleading, the result would not be
different.  In this event, we would have
considered only the alleged conditions precedent that are both listed in the
supplemental answer and asserted by the Bencon Parties on appeal.  All of these alleged conditions
precedent  are based on article 8 of the
Prime Contract, entitled AInvoicing and Payment.@  The unambiguous language of this article
deals with how Bencon should invoice Metro and how and when Metro should pay
Bencon.  The unambiguous language of this
article does not contain project plans, specifications, or contract conditions
that apply to the work Boyer agreed to perform under the Subcontract.  See Seale, 321 S.W.2d at 150B51; LeBlanc, 412 S.W.2d at 93; Patrick J.
Ruane, Inc., 8 Cal. Rptr. at 385. 
Therefore, the Subcontract does not incorporate these alleged conditions
precedent.  We do not address Boyer=s assertion that satisfaction of any alleged
conditions precedent is excused on the stated grounds that it would result in
an inequitable forfeiture or penalty.  See
TA Operating Corp. v. Solar Applications Eng=g, Inc., __
S.W.3d __, __, No. 04-04-00180-CV, 2005 WL 712010, at *3 (Tex. App.CSan Antonio March 30, 2005, no pet. h.);
Lesikar Const. Co. v. Acoustex, Inc., 509 S.W.2d 877, 881B82 (Tex. Civ. App.CFort
Worth 1974, writ ref=d n.r.e.).  





[4]  We note that, even if the Bencon
Parties had not waived error in this regard, we still would conclude under our
de novo review that the Ainextricably intertwined@ exception is
satisfied.  See Air Routing Intern.
Corp. (Canada), 150 S.W.3d at 687B98 (discussing de novo
standard of review and concluding that legal standard for Ainextricably intertwined@ exception was
satisfied).  





[5]  Even if the document in
question were in our record, it would not support the Bencon Parties= position because this
document does not contain an in limine ruling of the trial court; rather, it
contains an agreement by Boyer to approach the bench before mentioning any
criminal convictions of Eddie Baaklini.  The
complained-of cross-examination of the Bencon Parties= trial counsel did not
mention any conviction of Eddie Baaklini, so there is no apparent violation of
the purported in limine agreement.