**Affirmed in Part, Reversed and Remanded in Part, and Opinion filed July 19, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00013-CV

---

## MICHAEL S. LAND, Appellant

### V.

## STEPHANIE ANNE LAND, Appellee

---

**On Appeal from the 310th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-06029**

---

### O P I N I O N

Michael S. Land and Stephanie Anne Land divorced in March 2014. The trial court's final divorce decree incorporates an agreement dividing the marital estate. In a post-divorce suit, Stephanie sought (1) a division of $81,000 in assets she says were left undivided by the parties' agreement; and (2) the return of a diamond engagement and wedding ring.

After a bench trial, the trial court signed a final judgment awarding Stephanie

(1) $38,637 as her portion of the assets left undivided by the parties' agreement; and (2) any insurance funds received as compensation for claims paid on the ring. The trial court's final judgment also awards $30,480.10 as Stephanie's reasonable attorney's fees and costs. Michael challenges the relief granted in the trial court's final judgment. For the reasons below, we affirm in part and reverse and remand in part.

## BACKGROUND

The parties' dispute focuses on (1) the trial court's post-divorce division of $81,000 deducted from Michael's 2013 year-end employment bonus; and (2) the ring.

## I. Divorce and Division of Assets

Michael filed suit seeking a divorce from Stephanie in January 2013. The trial court signed a final divorce decree on March 13, 2014.

The trial court's final divorce decree incorporates Michael's and Stephanie's "Agreement Incident to Divorce," signed in March 2014, which establishes a detailed division of the marital estate based on an informal settlement agreement Michael and Stephanie signed at an earlier settlement conference.

Among other things, the parties' informal settlement agreement and Agreement Incident to Divorce address the disposition of Michael's 2013 year-end employment bonus. Schedule A to the informal settlement agreement provides as follows.

> DIVISION: All assets result in 53% division to wife, 47% to husband, including after sale of certain assets including the house, except as noted. Any division is net of all costs of sale, maintenance, etc. Stephanie Land shall receive [a] 53% portion of the 2013 year[-]end bonus paid to Michael in February 2014, if and when paid.

2

The parties do not dispute on appeal that any undivided assets are subject to this 53-47 percent division. The parties' Agreement Incident to Divorce states that Michael is entitled to receive as his sole and separate property "[a] 47% interest in the net amount of the 2013 year[-]end bonus from Occidental Petroleum undistributed as of the date of divorce," and that Stephanie is entitled to receive as her sole and separate property "[a] 53% interest in the net amount after taxes and deductions of the 2013 year[-]end bonus from Occidental Petroleum undistributed as of the date of divorce . . . ." The Agreement Incident to Divorce does not address Michael's 2013 year-end bonus in any other provisions, nor does it state that the agreement purports to divide all of the parties' assets.[1] The parties' Agreement Incident to Divorce provides that the ring is Stephanie's "separate property."

The agreement's terms addressing the distribution of Michael's 2013 year-end employment bonus use similar but not identical language with respect to each party's respective share: The distribution to Michael references a "net amount" of the 2013 year-end bonus, while the distribution to Stephanie references a "net amount after taxes and deductions." The parties do not assert that this difference reflects an intent to apply the phrase "net amount" differently to Michael and Stephanie.

Michael's February 2014 pay stub from Oxy USA Inc. shows the receipt of his 2013 year-end bonus in the gross amount of $460,000.[2] The pay stub shows that Michael's 2013 year-end bonus is subject to two pre-tax deductions: $75,000 for a deferred annual bonus and $6,000 for a personal savings account contribution. After these pre-tax deductions, Michael's 2013 year-end bonus equaled $379,000 and was

---

[1] The agreement states that "[a]ny assets of the parties not divided by this agreement will be subject to future division as provided in the Texas Family Code."

[2] Michael testified at trial that his "actual employer" was Oxy USA, Inc., a subsidiary of Occidental Petroleum.

subject to $108,711.10 in taxes. The February 2014 pay stub lists the "net pay" for Michael's 2013 year-end bonus as $270,288.90. This amount was deposited in Michael's checking account.

Michael paid Stephanie 53 percent of the net amount of $270,288.90, which equaled $143,253.12. Michael retained the remaining 47 percent, which equaled $127,035.78.

## II.     Post-Divorce Legal Proceedings and Property Division

After the parties' March 2014 final divorce decree, the next item in the appellate record is Stephanie's "Second Amended Petition for Enforcement of Property Division by Contempt" filed in February 2015.

Stephanie's February 2015 pleading sought an order enforcing the parties' Agreement Incident to Divorce and directing Michael to convey to Stephanie a 53 percent interest in the remainder of Michael's 2013 year-end bonus from Occidental Petroleum:  (1) the $75,000 deferred annual bonus; and (2) the $6,000 personal savings account contribution. This 53 percent interest represents $39,750 of the deferred annual bonus and $3,180 of the personal savings account contribution. In the alternative, Stephanie's second amended petition asked the trial court to treat the deferred annual bonus and personal savings account contribution as "undivided assets" and award her 53 percent of each.

Michael filed a no-evidence motion for summary judgment in August 2015. Michael's motion asserted that Stephanie "cannot . . . demonstrate all the elements for an action for enforcement of a decree," and requested a "partial summary judgment." Michael's motion did not address Stephanie's alternative claim for division of undivided assets. The trial court signed an order on August 28, 2015, granting Michael's no-evidence motion for summary judgment with respect to

4

Stephanie's enforcement action.

In October 2015, Stephanie filed her "Second Amended Petition for Enforcement of Property Division by Contempt and Original Counterpetition for Breach of Contract, Petition to Divide Undivided Asset and Motion fo[r] Clarification." Stephanie's October 2015 pleading reiterated her enforcement claim with respect to the $75,000 deferred annual bonus and $6,000 personal savings account contribution deducted from Michael's 2013 year-end employment bonus. Stephanie's October 2015 pleading also asserted (1) a claim to divide as undivided assets the $75,000 deferred annual bonus and $6,000 personal savings account contribution; (2) a breach of contract claim asserting that Michael's failure to distribute to Stephanie 53 percent of the deferred annual bonus and personal savings account contribution constituted a breach of the parties' Agreement Incident to Divorce; and (3) a breach of contract claim alleging that Michael retained the ring in violation of the parties' Agreement Incident to Divorce.

Michael filed an amended answer in response to Stephanie's October 2015 pleading. Michael asserted the affirmative defense of res judicata, contending that all of Stephanie's claims other than breach of contract for retention of the ring were barred. Michael asserted counterclaims for breach of contract and libel.

Michael filed a motion for traditional and no-evidence summary judgment in January 2016. Michael's January 2016 summary judgment motion asserted that res judicata barred Stephanie's claims seeking a division of Michael's 2013 year-end bonus; Michael claimed that the trial court's August 28, 2015 order on Michael's summary judgment motion "disposed of all of [Stephanie's] claims regarding the disposition of the bonus . . . ." The trial court held a hearing on Michael's January 2016 summary judgment motion and denied the motion.

The parties proceeded to a bench trial in October 2016. Michael's and

5

Stephanie's testimony at trial addressed (1) the $75,000 deferred annual bonus and $6,000 personal savings account contribution deducted from Michael's 2013 year-end employment bonus; and (2) the location of the ring. The parties' attorneys testified regarding attorney's fees.

At the conclusion of trial, the trial court orally rendered judgment in favor of Stephanie and ordered Michael to "pay to [Stephanie] 53 percent of the $81,000 after federal income tax deduction." The trial court also awarded Stephanie "any insurance funds for claims paid for the ring that's the subject of this suit." The trial court ordered Michael to pay Stephanie's attorney's fees and costs in the amount of $30,480.10.

On October 20, 2016, the trial court signed its "Order Granting Award of Undivided Asset." This order is a final judgment. It lists 11 factual findings.[3] The following findings are relevant to the issues presented in this appeal.

2. Michael S. Land had $6,000.00 of that year[-]end bonus withheld in a Personal Savings Account ("PSA", the 401(K) offered by Michael S. Land's employer at that time);

3. The $6,000.00 withheld in that PSA is an undivided asset;

4. Michael S. Land had $75,000.00 of that year[-]end bonus withheld as a Deferred Annual Bonus;

5. The $75,000.00 withheld in that Deferred Annual Bonus is an

---

[3] Under Texas Rule of Civil Procedure 299a, findings of fact should not be recited in a judgment but should be filed as a separate document. *See* Tex. R. Civ. P. 299a. If findings are made in the final judgment and they conflict with findings filed separately under Texas Rules of Civil Procedure 297 and 298, then the latter findings control for appellate purposes. *See id.* Here, the trial court did not file any separate written findings that could conflict with those included in its final judgment. Because they were not supplanted by separate findings, the findings included in the trial court's final judgment are accorded probative value. *See In re C.A.B.*, 289 S.W.3d 874, 881 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

undivided asset;

6. Those undivided assets are community property;

7. The intention of the parties was to award Stephanie Anne Land 53% of the community estate and Michael S. Land 47% of the community estate;

8. 53% of those undivided assets (totaling $81,000) is $42,930.00;

9. The award to Stephanie Anne Land shall be reduced 10% for taxes;

10. Stephanie Anne Land shall receive $38,637.00 net of taxes . . . .

The trial court's final judgment awards Stephanie $38,637 for her portion of the $81,000 in undivided assets after taxes, as well as "any and all insurance funds received for claims paid for the diamond engagement and wedding ring." The trial court's final judgment awards Matthew Skillern, Stephanie's attorney, $30,480.10 in attorney's fees and costs. The final judgment includes a Mother Hubbard clause that states, "All relief requested by the parties and not expressly granted is denied."

Michael did not request additional or amended findings of fact and conclusions of law.

Michael filed a motion for new trial challenging the trial court's division of the $75,000 deferred annual bonus and $6,000 personal savings account contribution deducted from his 2013 year-end employment bonus, as well as its award of attorney's fees and costs. Michael's new trial motion was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c). Michael timely appealed.

## ANALYSIS

Michael's arguments on appeal challenge (1) the trial court's post-divorce division of the $75,000 deferred annual bonus and $6,000 personal savings account contribution; (2) Stephanie's breach of contract claim pertaining to the ring; (3) the

portion of the trial court's final judgment that awards Stephanie "any and all insurance funds received for claims paid for the diamond engagement and wedding ring;" and (4) the attorney's fee award included in the final judgment.

## I. Post-Divorce Division of Michael's $75,000 Deferred Annual Bonus and $6,000 Personal Savings Account Contribution

The trial court determined that the $75,000 deferred annual bonus and $6,000 personal savings account contribution deducted from Michael's 2013 year-end employment bonus were assets left undivided by the parties' final divorce decree and Agreement Incident to Divorce. Concluding that the $81,000 was community property, the trial court determined that the parties intended to award Stephanie 53 percent of the community estate with Michael entitled to the remaining 47 percent. The trial court awarded Stephanie 53 percent of $81,000 after taxes, for a total award of $38,637.

We turn first to Michael's argument that the trial court's order on his August 2015 no-evidence summary judgment motion foreclosed the trial court's subsequent division of the deferred annual bonus and personal savings account contribution. Michael contends that "[t]he [August 2015] summary judgment granted by the trial court disposed of the very claims" Stephanie asserts here, and that "res judicata bars relitigation of the terms of the Decree."

Res judicata prevents parties from relitigating matters that were or could have been litigated in a previous suit. *Hallco Tex., Inc. v. McMullen Cty.*, 221 S.W.3d 50, 58 (Tex. 2006). To establish res judicata, a party must show (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action. *Hernandez v. Del Ray Chem. Int'l, Inc.*, 56 S.W.3d 112, 115 (Tex. App.—Houston [14th Dist.] 2001, no

8

pet.). With respect to the first element, a judgment is final if it "disposes of all remaining parties and claims" in a case. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001).

Michael's res judicata argument fails because the trial court's order granting Michael's August 2015 summary judgment motion is not a final judgment in a prior suit.

Stephanie's February 2015 pleading sought enforcement of the parties' final divorce decree or, in the alternative, a division of Michael's deferred annual bonus and personal savings account contribution as undivided assets. Michael's August 2015 motion sought summary judgment with respect to Stephanie's enforcement claim and asserted that Stephanie "cannot . . . demonstrate all the elements for an action for enforcement of a decree." Contending that Stephanie's "Petition for Enforcement must fail," Michael's motion requested a "partial summary judgment" with respect to Stephanie's enforcement claim.

The trial court granted Michael's August 2015 motion and signed an order directing that Stephanie take nothing in her "Suit for Enforcement." The trial court's order did not dispose of Stephanie's alternative claim seeking a division of Michael's deferred annual bonus and personal savings account contribution as undivided assets. Because the trial court's August 28, 2015 order on Michael's August 2015 summary judgment motion did not dispose of all claims in the case, it is not a final judgment. *See Hernandez*, 56 S.W.3d at 115.

Michael's second argument asserts that the trial court committed an error of law when it determined that the $75,000 deferred annual bonus and $6,000 personal savings account contribution were undivided assets subject to post-divorce division. According to Michael, the trial court's judgment impermissibly modifies the

unambiguous distribution included in the parties' Agreement Incident to Divorce.[4] Under Michael's reading of the Agreement Incident to Divorce and the final divorce decree, Stephanie receives no portion of the disputed $81,000 because these assets "were excepted from the distribution" and Stephanie "is not entitled to further distribution from [Michael's] estate."

Stephanie contends that the Agreement Incident to Divorce is unambiguous and does not distribute the $75,000 deferred annual bonus and $6,000 personal savings account contribution, which makes these amounts "undivided assets" that are properly subject to a post-divorce partition.

As part of their divorce proceedings, parties may enter into an agreement incident to divorce to address "the division of the property and the liabilities of the spouses and maintenance of either spouse." Tex. Fam. Code Ann. § 7.006(a) (Vernon 2006). If the trial court approves the agreement, the court may incorporate the agreement by reference in the final divorce decree. *Id*. § 7.006(b). Once the trial court approves the parties' agreement incident to divorce and incorporates it into the final divorce decree, the agreement is the judgment of the court. *Russell v. Russell*, 478 S.W.3d 36, 46 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

After approving the agreement incident to divorce, the trial court "may not amend, modify, alter, or change the division of property" included in the agreement. Tex. Fam. Code Ann. § 9.007(a) (Vernon Supp. 2017). An order that amends, modifies, alters, or changes the agreement's division of property is beyond the trial court's power and is unenforceable. *Id*. § 9.007(b).

---

[4] These challenges were asserted in Michael's motion for new trial and are preserved for our review. *See* Tex. R. App. P. 33.1(b) ("[i]n a civil case, the overruling by operation of law of a motion for new trial or a motion to modify the judgment preserves for appellate review a complaint properly made in the motion").

If a final divorce decree or an agreement incident to divorce fails to dispose of property subject to division, either former spouse may file suit to divide the property. *Id*. § 9.201(a) (Vernon 2006). In a post-divorce partition suit, the trial court has the power to "divide the property in a manner that the court deems just and right, having due regard for the rights of each party . . . ." *Id*. § 9.203(a) (Vernon 2006). The burden is on the party seeking the division to establish that community property existed when the marriage was being dissolved and that the property was not divided by the court when rendering the final divorce decree. *Brown v. Brown*, 236 S.W.3d 343, 348 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

An agreement incident to divorce is treated as a contract, and its legal force and meaning are governed by the law of contracts. *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986). If the agreement's provisions can be given a certain or definite meaning, then the agreement is unambiguous and we ascertain its meaning as a matter of law. *Buys v. Buys*, 924 S.W.2d 369, 372 (Tex. 1996). Courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract. *See Watson v. Heaton*, No. 14-09-00717-CV, 2010 WL 5132565, at *2 (Tex. App.—Houston [14th Dist.] Dec. 14, 2010, no pet.) (mem. op.).

The Agreement Incident to Divorce is not ambiguous and we construe its meaning as a matter of law. *See Buys*, 924 S.W.2d at 372. The Agreement Incident to Divorce unambiguously divides the "net amount" of the 2013 year-end employment bonus but does not divide deducted amounts for the deferred annual bonus and personal savings account contribution.

With respect to Michael's 2013 year-end employment bonus, the agreement states that Michael is entitled to receive as his sole and separate property "[a] 47% interest in the net amount of the 2013 year[-]end bonus from Occidental Petroleum

11

undistributed as of the date of divorce," and that Stephanie is entitled to receive as her sole and separate property "[a] 53% interest in the net amount after taxes and deductions of the 2013 year[-]end bonus from Occidental Petroleum undistributed as of the date of divorce . . . ." These corresponding distributions encompass only the "net amount" of Michael's 2013 year-end bonus; the provision distributing Stephanie's 47 percent explicitly states that the "net amount" is exclusive of "taxes and deductions." This conforms to the plain meaning of "net" as defined in Black's Law Dictionary as an amount of money "minus any deductions for expenses, commissions, and taxes." *Net*, Black's Law Dictionary at 1202 (10th ed. 2014). Accordingly, the parties' Agreement Incident to Divorce unambiguously divides only the "net amount" of Michael's 2013 year-end bonus; it does not divide or distribute amounts excluded from that classification.

Michael's February 2014 pay stub states that the "net pay" Michael received for his $460,000 2013 year-end bonus equaled $270,288.90. Under the unambiguous terms of the parties' Agreement Incident to Divorce, this "net amount" of $270,288.90 is the only portion of the bonus distributed by the agreement. The $75,000 deferred annual bonus and $6,000 personal savings account contribution fall outside of this "net amount" classification and are not otherwise divided or distributed by the parties' agreement. Therefore, these assets are subject to division in a post-divorce partition suit. The trial court's order dividing these assets does not modify the parties' Agreement Incident to Divorce. *See* Tex. Fam. Code Ann. §§ 9.007, 9.201(a), 9.203(a).

In Finding of Fact No. 6, the trial court determined that "[t]hese undivided assets are community property[.]" In Finding of Fact No. 7, the trial court found as follows: "The intention of the parties was to award Stephanie Anne Land 53% of the community estate and Michael S. Land 47% of the community estate[.]" The

parties do not dispute these findings. Because the deferred annual bonus and personal savings account contribution are community property and were not otherwise divided, these amounts are subject to the 53-47 percent division intended by the parties.

Our disposition of this issue comports with *Loya v. Loya*, 526 S.W.3d 448 (Tex. 2017). In *Loya*, the ex-spouses' mediated settlement agreement addressed future income as follows: "All future income of a party and/or from any property herein awarded to a party is partitioned to the person to whom the property is awarded." *Id.* at 452. Guided by the provision's plain meaning, the Supreme Court determined that the future income provision encompassed the ex-husband's 2011 bonus — an amount based in part on services provided before the divorce but paid after the divorce was final. *Id.* at 451-52.

Here too, we are guided by the plain meaning of the parties' Agreement Incident to Divorce, which divides only the "net amount" of Michael's 2013 year-end employment bonus. Construing Michael's February 2014 pay stub in light of the agreement's unambiguous directive, the $75,000 deferred annual bonus and $6,000 personal savings account contribution are excluded from the net amount of Michael's 2013 year-end bonus. Accordingly, these assets were not divided by the parties' Agreement Incident to Divorce and are subject to distribution in a post-divorce partition suit. *See* Tex. Fam. Code Ann. §§ 9.007, 9.201(a), 9.203(a).

Michael asserts that the agreement's specific reference to "deductions" precludes a conclusion that these assets are unidentified because "the text itself identifies the purportedly unidentified asset."

But the dispositive issue before us is not whether the Agreement Incident to Divorce "identifies" the disputed assets; instead, the dispositive issue is whether the Agreement Incident to Divorce divides the disputed assets. *See id.* at § 9.201(a);

13

*Brown*, 236 S.W.3d at 348. As discussed above, under the unambiguous terms of the parties' Agreement Incident to Divorce, the parties divide only the "net amount" of Michael's 2013 year-end employment bonus. This "net amount" does not include the $75,000 deferred annual bonus and $6,000 personal savings account contribution. Under unchallenged Finding of Fact No. 6, these assets are community property. Under unchallenged Finding of Fact No. 7, the default for undivided community property assets is the 53-47 percent division.

We overrule Michael's challenges to the trial court's post-divorce division of the $75,000 deferred annual bonus and $6,000 personal savings account contribution deducted from Michael's 2013 year-end employment bonus.

## II. Breach of Contract With Respect to the Ring

The October 20, 2016 Order Granting Award of Undivided Asset does not expressly state that Michael breached the Agreement Incident to Divorce by retaining the ring. It states: "Stephanie Anne Land is awarded any and all insurance funds received for claims paid for the diamond engagement and wedding ring."

Michael asserts that (1) Stephanie presented no evidence to support her claim that Michael breached the Agreement Incident to Divorce by holding or converting the ring; and (2) the trial court abused its discretion by awarding to Stephanie "any and all insurance funds received for claims paid for the diamond engagement and wedding ring."

We conclude that (1) legally sufficient evidence supports Stephanie's breach of contract claim, and (2) Michael waived his challenge to the trial court's final judgment insofar as he complains about the judgment's reference to insurance proceeds.

14

## A.      Legal Sufficiency

The findings included in the trial court's final judgment do not expressly state whether the trial court found in Stephanie's favor on her breach of contract claim arising from Michael's alleged retention of or failure to return the ring.  For the purposes of our review, it is implied that the trial court "made all the findings necessary to support its judgment." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).  Because the trial court's final judgment awards Stephanie relief based on the value of the ring, it is implied that the trial court found in Stephanie's favor on the breach of contract claim seeking relief for the loss of the ring.  *See id.*; *see also Perez v. Le Prive Enters., L.L.C.*, No. 14-15-00291-CV, 2016 WL 3634298, at *5 (Tex. App.—Houston [14th Dist.] July 7, 2016, no pet.) (mem. op.) (where trial court awarded damages for conversion claim but failed to include findings of fact, it was implied that the court determined the evidence satisfied all elements of a conversion cause of action).

The essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach. *Sec. Nat'l Ins. Co. v. Waloon Inv., Inc.*, 384 S.W.3d 901, 907 n.2 (Tex. App.—Houston [14th Dist.] 2012, no pet.).  Michael challenges the breach element and asserts that no evidence supports a finding that he retained or refused to return the ring in breach of the parties' Agreement Incident to Divorce.  A "no evidence" or legal sufficiency complaint may be asserted for the first time on appeal in a civil nonjury case.  Tex. R. App. P. 33.1(d).

Implied findings of fact are reviewable for legal sufficiency of the evidence by the same standards as applied to the review of a jury's findings.  *RR Maloan Invs., Inc. v. New HGE, Inc.*, 428 S.W.3d 355, 359 (Tex. App.—Houston [14th Dist.] 2014,

no pet.). Evidence is legally insufficient if: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

We review the evidence in the light most favorable to the trial court's implied findings and assume that the court resolved all conflicts in accordance with its judgment. *See id*. at 820. We credit evidence favorable to the trial court's findings if reasonable factfinders could and we disregard contrary evidence unless reasonable factfinders could not. *See id*. at 827. The ultimate test is whether the evidence at trial would enable reasonable and fair-minded people to reach the finding under review. *Id*. In applying these standards, we consider the undisputed evidence and the evidence that supports the implied finding; we do not consider evidence that a factfinder reasonably could have disbelieved. *In re J.F.C.*, 96 S.W.3d 256, 268 (Tex. 2002).

The evidence introduced at trial is legally sufficient to support the trial court's implied finding that Michael breached the Agreement Incident to Divorce by retaining or refusing to return the ring. Stephanie testified that she last saw the ring in November 2012, when she left it at the marital residence in Houston before traveling to California. Stephanie testified that she did not see the ring when she returned to the marital residence in May 2013. Michael remained at the marital residence during this period of time.

Michael had the ring appraised at the Houston Gemological Laboratory. When questioned, Michael did not recall the date of the appraisal but agreed that it occurred "after [Stephanie] left the marital residence." The appraisal was admitted

16

as an exhibit at trial. The appraisal was dated September 11, 2013, and included a photograph of the ring labeled "Actual Picture of Item."

Michael testified that he last saw the ring "[b]efore [Stephanie] left for California" in 2012. When asked about the photograph of the ring included with the September 2013 appraisal completed at his request, Michael testified that the photograph was "a picture of a picture of the ring" taken from an earlier appraisal.

A reasonable factfinder could have concluded that Michael had possession of the ring in September 2013, when he had it appraised, and thereafter. This evidence would enable reasonable and fair-minded people to find that Michael retained or refused to return the ring in breach of the parties' Agreement Incident to Divorce. The evidence is legally sufficient to support the trial court's implied finding with respect to Stephanie's breach of contract claim.

We overrule Michael's legal sufficiency challenge to Stephanie's breach of contract claim pertaining to the ring.

### B.    Trial Court's Final Judgment

The trial court's final judgment awards to Stephanie "any and all insurance funds received for claims paid for the diamond engagement and wedding ring."

Michael's challenge to this portion of the trial court's final judgment is unclear. Michael asserts that this award constitutes "an abuse of discretion" because "[n]o declaratory judgment was sought on an insurance matter." Michael also acknowledges that the ring "is [Stephanie's] separate property by agreement of the parties" and asserts that he is not challenging the trial court's declaration regarding insurance proceeds — a declaration he describes as "accurate but irrelevant to [the] disposition of the issues presented."

Insofar as Michael seeks to challenge this portion of the trial court's final

judgment, he has waived his right to do so. To preserve a complaint for appellate review, a party must present to the trial court a timely request, motion, or objection, state the specific grounds therefore, and obtain a ruling, or voice an objection to the trial court's failure or refusal to rule. Tex. R. App. P. 33.1(a). "To preserve a complaint of error in a judgment, a party must apprise the trial court of its objection by a motion to amend or correct the judgment, a motion for new trial, or some other similar method." *Willis v. Willis*, 826 S.W.2d 700, 702 (Tex. App.—Houston [14th Dist. 1992, no writ); *see also Rooney v. Rooney*, No. 14-10-01007-CV, 2011 WL 3684618, at *9 (Tex. App.—Houston [14th Dist.] Aug. 23, 2011, no pet.) (mem. op.).

Here, Michael appears to complain of asserted error in the trial court's final judgment, specifically, its award to Stephanie of any insurance funds received for claims paid for the ring. Michael did not apprise the trial court of this objection in a motion to amend or correct the judgment, a motion for new trial, or some other similar vehicle. Therefore, Michael failed to preserve for our review his complaint addressing the trial court's final judgment. *See Willis*, 826 S.W.2d at 702; *see also Rooney*, 2011 WL 3684618, at *9.

We overrule Michael's challenge to the trial court's final judgment with respect to its disposition of the claim concerning the ring.

## III.     Attorney's Fees

Michael asserts that the trial court erred by (1) awarding Stephanie attorney's fees; and (2) failing to award attorney's fees to Michael. We sustain Michael's challenge to the trial court's attorney's fee award insofar as it awards fees for work performed by non-attorney staff members.

18

## A.    Stephanie's Attorney's Fees

Michael asserts on appeal several arguments challenging the trial court's attorney's fees award:

1.    Stephanie's attorney's fee evidence was not segregated between claims for which attorney's fees are recoverable and claims for which they are not;

2.    Stephanie prevailed on a single claim but was awarded all her fees; and

3.    no evidence was offered addressing the qualifications of the non-attorneys for whom fees were awarded.

These issues were raised in Michael's motion for new trial and are preserved for our review. *See* Tex. R. App. P. 33.1(b). We sustain Michael's third challenge addressing fees awarded for work completed by non-attorney staff.

Stephanie's attorney Matthew Skillern provided the following testimony with respect to attorney's fees:

- "My hourly rate is $350.00 an hour. That is an amount that is customary for a lawyer with my skill and my experience."

- "[M]y associate, Triston Longino, who has been licensed for five years, has charged $250.00 an hour. Additionally, Melissa Skillern has been a paralegal at $100.00 an hour. Those are both customary rates for [a] paralegal and associate attorney with their skill and experience."

- "My total firm's attorney's fees in this matter, with the billable expenses that we've had to incur, are $36,080.10."

The trial court admitted as an exhibit 30 pages of billing sheets and invoices showing the time spent and expenses incurred by attorneys and non-attorney staff members working on Stephanie's case. The billing sheets and invoices detail the work performed and expenses incurred from December 2014 through August 2016. The total amount of charges equals $36,080.10; hourly work performed by non-attorney

19

staff totaled approximately $8,875. Each work entry on the billing sheets and invoices includes the date the work was performed; the individual who performed the work; that person's hourly billing rate; a description of the tasks completed; the amount of time spent; and the total amount billed.

During cross-examination, Skillern agreed that "it would be appropriate to deduct the amounts" incurred for Stephanie's enforcement claim and estimated that those fees equaled $3,500. Skillern agreed that segregation of fees was necessary as to the enforcement claim and estimated that $3,500 should be deducted from the overall fees for this purpose. Skillern stated that he did not segregate fees between "the ring issue versus the bonus issue."

The trial court's final judgment awards Skillern $30,480.10 in attorney's fees and costs. The trial court did not specify the basis for its award and Michael did not request findings of fact or conclusions of law on this issue.

We will not disturb a trial court's award of attorney's fees absent an abuse of discretion. *Cole Chem. & Distrib., Inc. v. Gowing*, 228 S.W.3d 684, 689-90 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (bench trial). "Generally, the test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or whether the trial court acted arbitrarily and unreasonably." *Charette v. Fitzgerald*, 213 S.W.3d 505, 512 (Tex. App.—Houston [14th Dist.] 2006, no pet.). When determining an appropriate fee award, the trial court is entitled to examine the entire record and "to view the matter in light of the amount in controversy, the nature of the case, and his or her personal experience as a lawyer or judge." *Cole Chem. & Distrib., Inc.*, 228 S.W.3d at 690.

A party may employ the lodestar method to prove its attorney's fees; the lodestar method requires proof "showing the hours worked for each of the attorneys multiplied by the applicable hourly rate for a total fee . . . ." *Auz v. Cisneros*, 477

20

S.W.3d 355, 360 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see also Saad v. Valdez*, No. 14-15-00845-CV, 2017 WL 1181241, at \*4, 20 (Tex. App.—Houston [14th Dist.] March 30, 2017, no pet.) (lodestar method used in bench trial). A lodestar fee determination begins with the number of hours reasonably expended on the litigation. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762 (Tex. 2012). "That proof should include the basic facts underlying the lodestar, which are: (1) the nature of the work, (2) who performed the services and their rate, (3) approximately when the services were performed, and (4) the number of hours worked." *Id*. at 763. This showing is generally met by "refer[ing] to some type of record or documentation to provide this information." *Id*.

Attorney's fees are recoverable only when provided for by statute or by the parties' agreement. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). A party seeking attorney's fees is required to "segregate fees between claims for which they are recoverable and claims for which they are not." *Id*. at 311. Segregation is not required when attorney's fees are recoverable for all causes of action. *See Law Office of David E. Williams, II, P.C. v. Fort Worth Tex. Magazine Venture, LP*, No. 02-10-00373-CV, 2011 WL 2651865, at \*4 (Tex. App.—Fort Worth July 7, 2011, no pet.) (mem. op.). But "when discrete legal services advance both a recoverable and unrecoverable claim[,] . . . they are so intertwined that they need not be segregated." *Chapa*, 212 S.W.3d at 313-14.

We first address Michael's contention that Stephanie failed to segregate her attorney's fee evidence between claims for which fees are recoverable and claims for which they are not. We overrule this contention.

Stephanie's October 2015 pleading asserted four causes of action: (1) an enforcement claim; (2) a claim to divide undivided assets; (3) a breach of contract claim with respect to Michael's 2013 year-end employment bonus; and (4) a breach

of contract claim with respect to the ring. At the hearing held on Michael's January 2016 summary judgment motion, Stephanie stated that she was not proceeding on her enforcement cause of action and acknowledged that the enforcement claim was disposed of pursuant to Michael's August 2015 summary judgment motion. Stephanie stated that she would seek to recover only with respect to her claims for undivided assets and breach of contract.

Attorney's fees are recoverable for both claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 2015) (fees recoverable for a contract claim); Tex. Fam. Code Ann. § 9.205 (Vernon Supp. 2017) (fees recoverable for a claim to divide undivided assets). The parties' Agreement Incident to Divorce also includes a provision providing for the recovery of attorney's fees:

> Reasonable attorney's fees and expenses of a party incurred in successfully prosecuting or defending a suit under this agreement against the other party or the other party's estate will be recoverable by the successful party in the action.

Both statute and contract authorize Stephanie's recovery of attorney's fees for the three claims on which she proceeded to trial. Therefore, Stephanie was not required to segregate her attorney's fee evidence among these three claims for which fees are recoverable. *See Chapa*, 212 S.W.3d at 310-11; *see also Law Office of David E. Williams, II, P.C.*, 2011 WL 2651865, at *4. Stephanie was required to segregate her attorney's fees proof to exclude attorney's fees for her unsuccessful enforcement claim, but Stephanie did so because her expert testified that $3,500 should be deducted for the work on this claim. *See Chapa*, 212 S.W.3d at 313-14.

Michael's second argument challenging the attorney's fee award asserts that, "[o]f the claims brought by [Stephanie], [Stephanie] prevailed on only one, and [Michael] prevailed on the balance, but [Stephanie] was awarded all her fees. This is reversible error and an abuse of discretion." We overrule Michael's second

challenge.

Michael did not request findings of fact and conclusions of law with respect to the trial court's attorney's fee award. *See* Tex. R. Civ. P. 296. On matters tried to the bench, where findings of fact and conclusions of law are not requested or filed, it will be implied that the trial court made all the findings necessary to support its judgment. *Builders First Source-South Tex., LP v. Ortiz*, 515 S.W.3d 451, 456 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). "In determining whether some evidence supports the judgment and the implied findings of fact, 'it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in its nature.'" *Worford*, 801 S.W.2d at 109 (quoting *Renfro Drug Co. v. Lewis*, 235 S.W.2d 609, 613 (Tex. 1950)). The trial court's judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Id*.

We are instructed to affirm the trial court's attorney's fee award "if it can be upheld on any legal theory that finds support in the evidence." *Id*. Stephanie was entitled to recover attorney's fees for each of the claims on which she proceeded to trial. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8); Tex. Fam. Code Ann. § 9.205. As discussed above, we conclude that (1) the trial court was correct in dividing as undivided assets the $75,000 deferred annual bonus and $6,000 personal savings account contribution; and (2) the evidence is legally sufficient to support finding in Stephanie's favor on her breach of contract claim pertaining to the ring. Stephanie segregated her proof as to the enforcement claim — the only claim on which she was unsuccessful.

Michael's third challenge relies on *El Apple I, Ltd.*, 370 S.W.3d 757, and asserts that Stephanie "offered no evidence on the qualifications or supervision of the non-attorneys for whom fees were awarded." We sustain Michael's third

23

challenge.

When using the lodestar method to quantify a fee recovery, "the applicant must provide sufficient details of the work performed" which "includes, at a minimum, documentation of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required." *El Apple I, Ltd.*, 370 S.W.3d at 764. To recover fees for work performed by non-attorney staff, courts have required additional evidence showing (1) the staff member's qualifications to perform substantive legal work; (2) that the staff member performed the substantive legal work under the direction and supervision of an attorney; (3) the nature of the legal work performed by the staff member; (4) the staff member's hourly rate; and (5) the total number of hours expended by the staff member. *Id.* at 763; *see also Bencon Mgmt. & Gen. Contracting, Inc. v. Boyer, Inc.*, 178 S.W.3d 198, 209 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (court affirmed fees awarded for work performed by non-attorney staff and cited *Moody v. EMC Servs., Inc.*); *Moody v. EMC Servs., Inc.*, 828 S.W.2d 237, 248 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (evidence insufficient to support fees for work done by non-attorney staff where it did not "establish the qualifications of the para-professionals, the type of work performed, the hourly rate for these persons, or the number of hours expended").

Here, the billing records include entries showing work completed by three non-attorney staff members that yielded approximately $8,875 in fees. Each entry lists the date the work was performed; who performed the work; the hourly rate of the person who performed the work; a description of the tasks completed; the amount of time spent; and the total amount billed. No evidence was presented to show the non-attorney staff members' qualifications to perform the substantive legal work for which they billed. Nor did any evidence show that the non-attorney staff member

24

performed the substantive legal work under the direction and supervision of an attorney. Consistent with the cases above, a fee award cannot compensate for work performed by non-attorney staff members without evidence showing the staff members' qualifications to perform the substantive legal work and showing that the staff member performed the substantive legal work under the direction and supervision of an attorney. *See El Apple I, Ltd.*, 370 S.W.3d at 763; *Moody*, 828 S.W.2d at 248. We cannot determine how much of the attorney's fee award was based on work performed by non-attorney staff. Therefore, we reverse the entire award of $30,480.10 in attorney's fees and costs and remand to the trial court with instructions to delete from this award any amount based on the work of a person who is not an attorney and to make a new award of attorney's fees and costs not based on the work of any such person because the proof regarding this work is legally insufficient. *See El Apple I, Ltd.*, 370 S.W.3d at 763; *Moody*, 828 S.W.2d at 248.

## B.    Michael's Attorney's Fees

Michael contends that he "prevailed on two of the three causes of action" and requests that the trial court "be directed to redetermine the award of fees to [Michael]."

Although Michael's attorney testified regarding attorney's fees, the trial court made no findings of fact or conclusions of law on the issue of whether Michael was entitled to attorney's fees. The trial court's final judgment does not indicate that Michael prevailed on any of his affirmative claims, and Michael did not request findings of fact or conclusions of law regarding the trial court's attorney's fee determination. *See* Tex. R. Civ. P. 296.

Because Michael did not request findings of fact and conclusions of law, we imply all findings necessary to support the trial court's judgment. *Builders First-Source-South Tex., LP*, 515 S.W.3d at 456. We imply a finding by the trial court

25

that Michael did not prevail on any of his affirmative claims and should not recover attorney's fees as to any of Stephanie's claims, a conclusion supported by the trial court's final judgment. *See Nipp v. Broumley*, 285 S.W.3d 552, 560 (Tex. App.—Waco 2009, no pet.) ("Because of the absence of any findings on the issue of attorney's fees, we will not render judgment in [defendant's] favor for attorney's fees.").

## CONCLUSION

We reverse the award of $30,480.10 in attorney's fees and costs and remand to the trial court with instructions to delete from this award any amount based on the work of a person who is not an attorney and to make a new award of attorney's fees and costs not based on the work of any such person due to the legal insufficiency of the proof for this work. We affirm the remainder of the judgment.


/s/     William J. Boyce
          Justice


Panel consists of Chief Justice Frost and Justices Boyce and Jewell.

26